(80 Misc. Rep. 4.)

### In re BROWN.

(Surrogate's Court, New York County. April 12, 1913.)

1. GUARDIAN AND WARD (§ 30*)—MAINTENANCE—ALLOWANCE.

As a rule the entire cost of maintenance of well-to-do infants shall not exceed the sum total of the interest on the capital of their estate.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116–135; Dec. Dig. § 30.*]

2. GUARDIAN AND WARD (§ 2*)—SURROGATE.

In legal theory, the chancellor, or the surrogate substituted for him, is the guardian of incompetents, including infants.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 2; Dec. Dig. § 2.*]

3. WORDS AND PHRASES—"POSITION"—"RANK."

The words "rank" or "position," as used with respect to the rank of individuals in society, are synonymous.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 5918, 5919.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. **GUARDIAN AND WARD (§ 30\*)—MAINTENANCE—ALLOWANCE.**

On an application for an allowance from an infant's estate for maintenance, it is necessary to allege that the infants' father, who is their guardian, is unable to maintain the children, since the father's circumstances are relevant in considering the question.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116–135; Dec. Dig, § 30.\*]

5. **GUARDIAN AND WARD (§ 30\*)—MAINTENANCE—ALLOWANCES.**

In determining the proper allowance from an infant's estate for its maintenance, the amount of the infant's fortune should be considered.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116–135; Dec. Dig. § 30.\*]

6. **GUARDIAN AND WARD (§ 30\*)—MAINTENANCE—ALLOWANCES FOR SUPPORT— DETERMINATION.**

In determining the amount of an allowance from the estate of female infants of the ages of three and eight years for their maintenance, the infants' alleged "position," social, etc., cannot be considered, since simplicity in bringing up children is the principal consideration, and children so young have no "position" in any proper sense.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116–135; Dec. Dig. § 30.\*]

7. **GUARDIAN AND WARD (§ 30\*)—MAINTENANCE—ALLOWANCES—EDUCATION.**

The secular and religious education of an infant ward are proper matters in considering the amount of an allowance out of their estate for maintenance.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116–135; Dec. Dig. § 30.\*]

8. **GUARDIAN AND WARD (§ 30\*)—MAINTENANCE—ALLOWANCES—HOME.**

In fixing the allowance of infant female wards for their maintenance, the fact that the home belonging to their estate has been sold and that another one will be necessary in the future should be considered.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116–135; Dec. Dig. § 30.\*]

9. **GUARDIAN AND WARD (§ 30\*)—MAINTENANCE—ALLOWANCES—DETERMINATION.**

In determining the amount allowed for the maintenance of infant female wards of large estate, the fact that they will be required to formally enter into society may be considered, as requiring some slight increase in their allowance.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116–135; Dec. Dig. § 30.\*]

10. **GUARDIAN AND WARD (§ 30\*)—MAINTENANCE—REIMBURSEMENT FOR EXPENDITURES.**

The surrogate has no power to order reimbursement of a guardian of infants by the trustee of the wards' estate for the moneys expended by the guardian before his appointment for past maintenance of the wards or expenditures for their benefit.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116–135; Dec. Dig. § 30.\*]

Petition by one Brown, as guardian, for an allowance of a certain sum for infants' past and future maintenance. Amount allowed as stated.

Lord, Day & Lord, of New York City, for petitioner.
Bowers & Sands, of New York City, for executor.

FOWLER, S. [1] This matter comes on for hearing on a petition of the guardian for an annual allowance of $18,000 for the future support and maintenance of two infant females, and also for an allowance of $27,724.68 for their past maintenance, all to be paid out of the income of the infants' estate. It is unnecessary to say that the general rule is that the entire cost of maintenance of well-to-do infants shall not exceed the sum total of the interest on capital. This application, I understand, does not involve a resort to principal.

[2] The application for an allowance out of the estate of an infant is always very serious. In legal theory, the chancellor, or the court substituted for the chancellor, in this instance the surrogate, is the guardian of incompetents. Formerly a warrant to that effect passed with the chancellor's seal of office. The relative commissioned as guardian is only the guardian designate, or official of the court, and if the court expressly sanction improvidence or waste of the infant's estate, it is not only "error," but a wrong to the child done by the court. Thus it is that these applications require our serious consideration at all times. The surrogate's present jurisdiction of this matter flows from section 2804, Code of Civil Procedure.

I am asked in this matter to allow out of the income coming into the hands of their guardian $18,000 per annum for the support and maintenance of an infant under seven and a minor over seven years of age. Although the law distinguishes an infant from a minor (Rex v. Delaval, 3 Burr. 1434, 1436), they may be regarded in this matter as either infants or minors. The children are respectively three and eight years. It is stated in the petition that the best interests of these very young girls demand that an allowance should be made which will permit their maintenance "in a manner in keeping with their position and prospects." I confess that I do not quite understand the present meaning of the allegation concerning the "position" of these infants. There is some authority in old books for the allegation concerning the "position" of infants, as the position of infant heirs was then to be taken into account in fixing their allowance. Harney v. Harney, 2 P. Wms. 22; Eversley's Domestic-Relations, 637.

[3] In times past and in a country where the higher gradations of rank involve profound and exacting obligations of duty, rank or "position," which I take to be synonymous in law, may well have been taken into consideration by the chancellor in fixing allowances. In this country, where rank is not recognized, the more usual averment at the present day is that the "situation and the fortune" of the infants are such as to be taken into account in fixing the allowance for the support, education, and maintenance of such infants. The former great and necessary obligations of a legally recognized "position" are with us, I fear, in cases other than this, too often confounded with mere luxury, or habitual and trifling display. In the interests of infants, committed to the care of this court, I am tempted to offer tentatively some observations, taken from the precedents, on certain features of the education and maintenance of infants which I think may, with more accuracy, be taken into account by the surrogate in fixing future allowances for the support, maintenance, and education of wealthy infant wards of court.

[4] The father of the infants in this instance is their guardian, and in his petition he alleges that he is unable to maintain the children. This is a necessary allegation on an application of this kind, and a prerequisite to the order sought. Errat v. Barlow, 14 Ves. 202; Buckworth v. Buckworth, 1 Cox, 80; Voessing v. Voessing, 4 Redf. Sur. 360; 3 Pomeroy, Eq. Jurisp. § 1309. The court must always take into consideration on such an application as this the circumstances of the father. Tweddell v. Tweddell, Turn. & Russ. 13; Allen v. Coster, 1 Beav. 202; Rice v. Tonnele, 4 Sandf. Ch. 568, 570.

[5] Another essential element for consideration is the amount or aggregate of the infant's fortune. The aggregate fortunes of these children are scheduled at $580,034.50, which, safely invested at 4 per cent., would produce about $24,000 per annum. I confess I do not altogether like the showing made by the petition. It is evident to me therefrom that before their mother's death the "spes successionis" of these very young ladies had been blighted by an unusual extravagance, and the considerable estate now coming to them from her is not nearly so large as they had a birthright to expect from a once rich, but very improvident, parent. But if we pass the allegations to this effect, and assume that these young ladies are, or will be, in receipt of a yearly income of $24,000, the question is what portion of it should be allowed to their father as their guardian for their support, education, and maintenance? Of course, the guardian must duly account for the allowance, whatever it is. On his first accounting, the sufficiency or excess of any allowance ought to appear.

[6] It must be recognized that the amount allowed for the maintenance of infants differs with the circumstances of each case. I recognize that already these particular young ladies are habituated to luxury to some degree, and that their proper care and future education must not be overlooked. The statement of the petition in regard to the necessities of the "infants' position" I cannot consider for a moment in fixing their allowance. Children so young as these have no position in any sense of that term to maintain, and it has been observed that children of "position" are usually the simplest in their upbringing. In fact, simplicity and a good childhood are synonymous in the vocabulary of right-thinking people. All children are benefited by simplicity, and the children of the really great are generally the most simple in their upbringing and in respect of their clothing, diet, and the like. Simplicity and a natural distinction are the best characteristics of an elevated childhood.

[7] The item which I regard as of most importance to these young ladies is a good and even an expensive secular and religious education, and for that purpose the allowance to their guardian should be liberal to the extreme. No specific mention of those items is, however, contained in the petition. But formerly in chancery the secular and religious education of an infant ward of court was a subject of much concern. Kettletas v. Gardner, 1 Paige, 488; Story, Eq. Jurisp. § 1341; 3 Pomeroy, Eq. Jurisp. § 1308. Certainly both of these most important matters are still entitled to be taken into consideration in fixing the allowance. Wilkes v. Rogers, 6 Johns. 566, 574, 575.

The guardian's petition alleges, in substance, that the use of the infant's income will be much more to their advantage than its accumulation. This seems to me to be an extraordinary allegation for a guardian of two very little girls. This allegation does not meet my approval. The lessening interest and value of money, the increase of taxation and greater costs of living, demand otherwise of their guardian. The estate of these infants should, if possible, be augmented against their respective majorities and subsequent marriages, and all the income over the necessary cost of their proper maintenance, support, and education should be invested at interest and put aside for their future benefit.

[8] It appears that the infants have no longer an expensive estate to maintain in the country, as it has been leased under a contract of sale. This is as it should be. But as an individual and private home is doubtless expedient for two young ladies of any age, this is to be taken into consideration in fixing the allowance. In Griggs v. Gibson (Ch. 1873) 21 W. R. 818, an allowance was sanctioned for furnishing a home for infants, there being no opposition from any quarter to the order. It seems to me that an annual allowance of $5,000 out of each infant's income ought to be amply sufficient to maintain, support, and educate them in an appropriate manner, suitable to their excellent condition and their fair estate.

[9] I am aware that it has been said that courts endeavor to promote the infants' permanent happiness, and that they have declared that it is not always promoted by rigid economy. Woerner, American Law of Guardianship, 169, citing Matter of Burke. But in Matter of Burke, 4 Sandf. Ch. 617, the vice chancellor's statement to this effect is much modified by the fact that the young ladies' fortune was relatively small, and it was rightly thought better to maintain them at home at greater cost than to maintain them at a boarding school for less. Ten thousand dollars per annum is not, however, rigid economy for any station in life, much less for two infants. An aggregate of $10,000 per annum seems to me to border on the side of extreme liberality. I observe in Matter of Goodwin, 122 App. Div. 800, 107 N. Y. Supp. 784, that the Appellate Division of this department regarded one-half of infant's annual income of $4,000 as a proper allowance in view of infant's invalidism. But there the income was smaller than those involved in this proceeding. At a time when these young ladies now in court are called upon to go formally into the world, some slight increase of allowance may be expedient and even proper. Courts by precedents of authority are authorized to take such facts into consideration in augmenting an allowance. But such exigencies are in this case fortunately still remote.

[10] In regard to the application for reimbursement of the guardian by the trustees of moneys expended by the guardian before his appointment for past maintenance of his wards, or for expenditures for their benefit, it must be denied, as the surrogate has no power to grant it. Matter of Scherrer's Estate, 24 Misc. Rep. 351, 53 N. Y. Supp. 714.

Submit order on notice, requiring the trustee to apply $5,000 a year for the maintenance of each of the infants out of the income of the trust created for their benefit, and denying the application of the guardian for reimbursement for past maintenance.