In the Matter of JOHN W. STUART, an Infant.

FRANK A. McNAMEE, JR., et al., Appellants; CHARLES M. STUART, Respondent.

246

Argued March 7, 1939; decided April 11, 1939.

*Robert E. Whalen* for appellants. For the purpose of this appeal, the Surrogate's findings of fact must stand. (*Matter of Grossman*, 131 Misc. Rep. 526; *Matter of Hogan*, 147 Misc. Rep. 112; *Matter of Zaiac*, 279 N. Y. 545.) A surviving parent, not charged with bad character or other unfitness, is not entitled, absolutely and at all events, to the custody of a child over fourteen years of age, who, for good reason, prefers another. (*Matter of Gibbs*, 96 Misc. Rep. 537; *Matter of Wainman* v. *Richardson*, 119

Misc. Rep. 363; *People ex rel. Roberts* v. *Kidder*, 137 Misc. Rep. 347; *People ex rel. Mahoff* v. *Matsoui*, 139 Misc. Rep. 21; *Matter of Lee*, 220 N. Y. 532; *Ledwith* v. *Ledwith*, 1 Dem. 154; *Matter of Gustow*, 220 N. Y. 373.) The Appellate Division has overridden the infant's expressed preference and has substituted its own judgment for that of the Surrogate. (1 Black. Comm. p. 462; 2 Kent Comm. p. 227; *Sherman* v. *Ballou*, 8 Cow. 304; *People ex rel. Pascale* v. *Lanza*, 166 Misc. Rep. 370; *Matter of Shonts*, 229 N. Y. 374; *Gang* v. *Gang*, 253 N. Y. 356; *Matter of Superintendent of Banks*, 207 N. Y. 11; *Halfmoon Bridge Co.* v. *Canal Board*, 213 N. Y. 160; *Forstmann* v. *Joray Holding Co.*, 244 N. Y. 22; *Rudiger* v. *Coleman*, 228 N. Y. 225; *Matter of Vandewater*, 115 N. Y. 669; *Matter of Lee*, 220 N. Y. 532.)

*George B. Brooks* for respondent. The father as natural guardian of his son is entitled to letters of guardianship of the person, there being no showing of unfitness. (*Matter of Decker*, 252 N. Y. 1; *Matter of Thorne*, 240 N. Y. 444; *Matter of Reynolds*, 11 Hun, 41; *Ledwith* v. *Ledwith*, 1 Dem. 154; *Matter of Barre*, 5 Redf. 64; *People ex rel. Boulware* v. *Martens*, 232 App. Div. 258; affd., 258 N. Y. 534; *People ex rel. Woolston* v. *Woolston*, 135 Misc. Rep. 320; *Matter of Metzger*, 114 Misc. Rep. 313; *Matter of Tully*, 54 Misc. Rep. 184; *Matter of Munn*, 101 Misc. Rep. 171.) The right given to an infant over fourteen years of age to nominate a guardian of the person does not exist where there is a natural guardian unless the latter is unfit. (*Foley* v. *Mutual Life Ins. Co.*, 138 N. Y. 333; *Ledwith* v. *Ledwith*, 1 Dem. 134; *Matter of Barre*, 5 Redf. 64; *Matter of Reynolds*, 11 Hun, 41; *Jordan* v. *Jordan*, 4 Tex. Civ. App. 559; *Beard* v. *Dean*, 64 Ga. 258; *Newton* v. *Jawrin*, 62 N. H. 440; *Bracket* v. *Bracket*, 77 N. H. 68.)

Hubbs, J. John Walker Stuart, the petitioner, an infant nearly seventeen years of age, instituted this proceeding for the appointment of a guardian. He sought the appointment of the appellant Frank A. McNamee, Jr., as guardian

of his person. The National Commercial Bank and Trust Company of Albany had been appointed guardian of his property in a proceeding on a previous application made by the respondent Charles M. Stuart, father of the infant, for his own appointment as guardian of both the person and property of the infant. It appears that the respondent and the mother of the infant were divorced on December 30, 1929, custody of the petitioner and his sister, twenty-one years of age when this proceeding was instituted, being awarded to the parents jointly. On July 1, 1930, the mother married Frank A. McNamee, Jr., an attorney at law. Thereafter the sister resided with the mother and Mr. McNamee at Loudonville, Albany county, and the petitioner spent his school vacations there with his mother and sister. The respondent's duties required him to travel extensively, and he saw very little of the children. In 1933 the respondent obtained a position in New York city, since which time both children have resided exclusively with their mother and stepfather, Mr. McNamee. Since September, 1933, petitioner has attended St. Mark's School at Southborough, Mass. From the early part of 1933 to the time of her death on January 26, 1936, the mother supported the petitioner. Subsequently, and pending judicial settlement of an estate in which petitioner has an interest valued at approximately $375,000, the stepfather, Mr. McNamee, has advanced all money for petitioner's education and support. It appears that petitioner and respondent, his father, are on friendly terms, and there is no indication that the father is not a proper person to act as guardian of the infant. The petitioner states, and the Surrogate has found, however, that the petitioner desires to continue to make his home in Albany county, where he and his sister were born, because he wishes to continue his close relationship with his sister, because his estate is located there, and because of his many friends in and about Albany. The Surrogate found that the sister has a good influence on the petitioner.

Upon the foregoing state of facts the Surrogate made a decree appointing the appellant Frank A. McNamee, Jr.,

guardian of the person of the infant appellant. The Appellate Division modified the decree upon the law by striking out the name of Frank A. McNamee, Jr., appellant, as guardian and substituting the name of Charles M. Stuart, the respondent, and by inserting a provision that the infant remain at the school which he now attends.

It appears from the memorandum of the Appellate Division that the modification was made upon the theory that the law is that in the absence of proof showing that a surviving parent is of bad character or otherwise unfit to have the custody of his minor child, his right to custody is paramount to that of any stranger or other relative. In support of such rule the court cites section 81 of the Domestic Relations Law (Cons. Laws, ch. 14), which provides that a surviving father or mother may, by deed or will, dispose of the custody of a child, and various decisions, particularly *Matter of Thorne* (240 N. Y. 444), in which case custody of infants under the age of fourteen years was awarded to their parents. We believe the Appellate Division has accorded to the decisions upon which it relied an effect unwarranted by what has been said in those opinions and not intended when those opinions were written. All of the cases cited by the Appellate Division were cases involving infants under fourteen years of age. Quite different basic principles are involved in the appointment of guardians of infants of tender years than are applicable in the appointment of guardians of infants of more mature age. Nevertheless, each case depends upon its own facts.

Our present statutory proceeding for the appointment of guardians of infants over the age of fourteen years had its origin in the common law rule that if there be no testamentary guardian the Surrogate or Judge of Probate is authorized to appoint guardians who shall be chosen by infants of the age of fourteen years. (2 Kent's Comm. p. 227.) Originally an heir above the age of fourteen years might supersede his guardian in socage by one of his own choice under a deed of appointment. The right of sole appointment has in this country been superseded by a

requirement of judicial approval. The right of nomination remains, however, subject to judicial approval. (Schouler on The Law of Domestic Relations [4th ed.], § 301.) Under our present statute such an application must be made by the infant except where the infant is of unsound mind or refuses to make such petition. (Surr. Ct. Act, § 175.) The petition is required to state: " If either parent is living and there are reasons why the parent should not be appointed such guardian, the reasons therefor." (§ 176, subd. 6.) The Surrogate is required to make inquiry as to the facts and circumstances regarding the infant, his condition in life and surroundings. (§ 178.) The Surrogate must make a decree appointing a guardian if satisfied that the allegations of the petitioner are true and that the interests of the infant will be promoted and may " in his discretion, appoint a person other than the father or mother of the infant, or other than the person nominated by the petitioner." (§ 179.) The Legislature has granted to Surrogates a wide discretion, and they are not required to appoint the person nominated by the infant or the father or mother. In all cases involving the appointment of a guardian for an infant the paramount question is whether the interest of the infant will be promoted by the appointment to be made. The decisions are uniform in so deciding, even in cases where the infant was under fourteen years of age. (*Matter of Gustow*, 220 N. Y. 373.)

If it appears to be for the best interests of the infant to appoint one other than the father or mother there is no abuse of discretion in making such an appointment, and the appointment is within the power of the Surrogate to make. Surely the Surrogate may consider the ties of family and friendships which the infant has made and which he desires to have continued unbroken. To reach the conclusion that to so decree as to continue established and favorable relationships in a salutary environment, and to refuse to uproot the infant and place him in a new home where he may or may not be happy and contented, even though it be with a father who, while not having supported him,

may have failed to do so solely because of not having his custody, would hardly seem to evidence an abuse of discretion. Surely some regard should be had for the expressed preference of the infant when he has exercised his right to petition, has stated sound reasons for the nomination of another, and it is shown that his future will not be jeopardized but rather that the likely result will be a continuance of beneficial relationships, whereas any change might result in less happiness on his part and less favorable progress as a result.

Section 81 of the Domestic Relations Law is not a bar to the appointment by the Surrogate, in a proper case, of one other than a parent as guardian of an infant over fourteen years of age. It merely provides for a testamentary grant by the survivor of the parents, or by one to the other in their lifetime, of the custody and tuition of a child during minority. Its purpose was not to confer rights of guardianship upon parents but to settle as between parents their respective rights. (*Matter of Gustow, supra; Goodman* v. *Alexander*, 165 N. Y. 289; *Matter of Wagner*, 75 Misc. Rep. 419, 427.) That section must be considered in the light of section 173 of the Surrogate's Court Act, which specifically confers on the Surrogate's Court power to appoint a general guardian of the person or property, or both, of an infant whose father or mother are living, subject to the limitation that such power and authority must be exercised in like manner as they were exercised by the Court of Chancery, subject to the provisions of the Surrogate's Court Act.

We reach the conclusion, therefore, that the Surrogate was not without power to appoint appellant Frank A. McNamee, Jr., even though no moral turpitude or other fault on the part of the father was shown. The Appellate Division has reversed on the law. It has not indicated any disapproval of the Surrogate's finding of facts as set forth in his decision. No facts appear which indicate an abuse of discretion on the part of the Surrogate. We are, therefore, without authority to review his exercise of discretion. (*Matter of Welch*, 74 N. Y. 299; *People ex rel. Riesner* v. *N. Y. N. & C. Hospital*, 230 N. Y. 119, 125.)

It follows that the order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.