Louis D. Laurino, S.
The children who are the subjects of this guardianship proceeding are Maureen Teresa Sapanara, born on May 16, 1972 and her brother, Michael Daniel Sapanara, born on January 4,1974.
The natural parents of these children were Lynn E. Sapanara, who died intestate on October 28, 1975, and her husband, Sylvester Sapanara, who died testate on May 24, 1976.
Prior to the father’s death he and the children lived with his mother, Louise Sapanara, and his brother, Roy Sapanara. After his death the children continued to live with the paternal grandmother and uncle until the uncle’s marriage in September of 1976. Since the marriage they have lived with their uncle and his wife.
Paragraph 4 of the will of the natural father stated:
"4. Appointment of Fiduciary. I appoint my brother, ray Robert sapanara, as guardian of the person and property of my children.”
Prior to the commencement of the probate proceeding in Surrogate’s Court of Queens County, a guardianship proceeding was commenced in Family Court by verified petition by the maternal grandmother, Teresa Pando, on behalf of the children against the paternal grandmother, Louise Sapanara. Subsequently, the petitioner’s husband, John Pando, was added as a petitioning party, and the paternal uncle, Roy Sapanara, was added as a party respondent. A verified answer was filed in Family Court by the paternal grandmother. Judge Moskoff of the Family Court requested an investigation by the Probation Department and a report by an independent psychiatrist to be chosen by both parties.
Shortly after the filing of the petition in Family Court, a petition was filed in Surrogate’s Court for the probate of the will of Sylvester Sapanara. The will was admitted to probate and letters testamentary were issued on July 28, 1976. A petition for the appointment of the nominated testamentary guardian was filed on August 3, 1976. On August 13, 1976 the Surrogate advised the Hon. Saul Moskoff that a petition for *958 the probate of the last will and testament of the natural father, Sylvester Sapanara, had been filed, that the will had been admitted to probate, that a testamentary guardian had been named therein, and that a petition for the appointment of the guardian had been filed.
At that point jurisdiction over the guardianship proceedings lay in Surrogate’s Court and the matter was transferred. The right of a parent to appoint a testamentary guardian is not a common-law right but is granted by statute. This right was first given in New York State by section 11 of chapter 47 of the Laws of 1787 and has continued to this day. The substantive law governing the appointment of testamentary guardians is found in sections 81 and 82 of the Domestic Relations Law. Section 81 provides in part:
"Appointment of guardians by parent. * * * Upon the death of either father or mother, the surviving parent * * * of any living child under the age of eighteen years and unmarried, may, by deed or last will, duly executed, dispose of the custody and tuition of such child during its minority * * * to any person or persons * * * An appointment of a guardian of the person and property of any infant made by duly executed last will of his father or mother shall be valid and effective if at the time the will is admitted to probate the other parent shall have died”. * * * A person appointed guardian in pursuant of this section shall not exercise the power of authority thereof unless such will is admitted to probate * * * as provided by SCPA 1710” (emphasis supplied).
Upon the removal to Surrogate’s Court, the grandparents were no longer necessary parties in the proceeding for the appointment of a testamentary guardian. Under SCPA 1710, 1711, which deal with the procedures necessary for the appointment of testamentary guardians there is no requirement that notice be given to anyone. The only requirements set forth are that the proposed guardian qualify under SCPA 708 within three months of the admission of the will to probate and that he file a petition setting forth facts that entitle him to qualify and receive letters. When these conditions are met the court issues letters of guardianship. There are no other requirements.
If there is no opposition to the petition, the matter is decided on the papers submitted. When, as in this case, there is opposition, a hearing is a necessity. The Surrogate allowed the maternal grandmother to appear as an interested party. *959 The -matter was transferred from the Family Court to Surrogate’s Court, all parties agreeing that the pleadings, the investigative and psychiatric reports in Family Court should become part of the official records in this court, and that a hearing would be held before the Surrogate. The Surrogate would then be able to make a considered judgment. "The Legislature has granted to Surrogates a wide discretion, and they are not required to appoint the person nominated by the infant or the father or mother. In all cases involving the appointment of a guardian for an infant the paramount question is whether the interest of the infant will be promoted by the appointment to be made.” (Matter of Stuart, 280 NY 245, 250.)
When the petition was filed in Family Court the issues raised were, on the one hand, the fitness of the paternal grandmother (the paternal grandfather had died) to care for the children, and, on the other hand, the fitness of the maternal grandmother because of a conflict of interest vis-ávis the children, which conflict need not be discussed herein. Petitioner, Teresa Pando, sought to be appointed general guardian. In such a proceeding the grandparents are necessary parties since the natural parents were dead. After the will was admitted to probate and before the transfer to Surrogate’s Court, the nominated guardian, the paternal uncle, was added as a necessary party in the Family Court proceeding. His qualifications were also challenged.
At the hearing the court heard testimony pertaining to the character, fitness and responsibility of all the parties. It was clearly demonstrated that the nominated guardian and his wife, and the maternal grandmother and her husband were equally able to care for the children; each could offer love and affection; each had comfortable homes where the children would be secure and protected; and each were interested and concerned for the well-being of the children. The initial report and the supplemental report of Miss Mary Singleton, a social worker connected with the Family Court, were admitted into evidence; both the Sapanara and Pando families were found to be fit guardians. The psychiatric report, submitted by Dr. Donald B. Moss, was also admitted into evidence. He found both families fit. He found the children, especially the elder one, somewhat upset and anxious because of the tragedies endured by these infants and the consequent disruption of their lives. He further stated that they were adjusting well *960 and developing a sense of security since they had been living with the Sapanaras. He stated at the end of his report: "I recommend that the children stay with the Sapanaras.”
It must also be borne in mind that the children’s father was concerned with their welfare after his death.”[T]he Court cannot disregard the testamentary provisions for guardianship, unless the welfare of the children demands it.” (Matter of Lewis, 74 NYS2d 865, 867.) He named his brother testamentary guardian. A testamentary guardian need not be a blood relative, but as a rule, it is a blood relative in whom the testator or testatrix has great confidence; their social, economic and religious backgrounds are similar; the family ties are close. We cannot disregard the expressed wish of a young father to do what he thought best for his children. Taking into consideration the testimony at the hearing, the unrebutted testimony of the psychiatrist and the express direction of the natural father, I direct that letters of testamentary guardianship be granted to Roy Robert Sapanara. I dismiss the oral request of his attorney to include as testamentary or general guardian his wife Maureen Sapanara.
SCPA 1711 requires that the nominated guardian qualify under SCPA 708 within three months of the probate of the will, or he is deemed to have renounced. There is a further provision that the court may for good cause shown extend the time either before or after the expiration of the three-month period. The proposed guardian has not yet made application to extend his time; such an application would have been unnecessary pending the hearing and final determination. However, I suggest that Roy Robert Sapanara now make the appropriate application under SCPA 1711 (subd 4) to extend the time to qualify for good cause shown.
I further suggest that both sides make every effort to reconcile their differences. The adults will suffer to some extent because of the acrimony engendered by the court actions. I must, however, point out that the children will suffer greatly by being deprived of the love and friendship of their mother’s side of the family. These children have suffered enough. They should not have the burden of trying to understand why they no longer see the maternal side of the family. Their relationship with the Pandos should continue. There should be reasonable opportunities for them to visit the children and the children should be allowed to spend occasional *961 weekends in the Pando’s home. The details should be worked out by both parties, so that the children will not suffer.
Despite the fact that guardianship of the infants has been awarded to Roy Sapanara, it must be clearly understood that the children are still wards of the court. The court will, in the future, continue to act in their best interests if it is shown that they are not being treated properly. (Matter of Lewis, supra.)