*2 OPINION OF THE COURT
Kevin C. Fogarty, J.
In these pending proceedings the petitioners, aunts, uncles and paternal and maternal grandparents, have all filed petitions for varying reasons, viz., to enter military service free of custody of their child,[2] to obtain Social Security benefits, to enter a child into school,[3] to acquire insurance coverage, or to have authority to sign for possible medical service at some future date. The natural parents are in each of these cases petitioners who have been referred to the Family Court as the “court of common convenience” which will as the testimony indicates give them “a piece of paper” to show that it is “o.k.” for them to have the child.
In each of the sample cases combined together for this opinion the parties merely seek court recognition of a state of facts that already exist. The child at this time already resides with the petitioner and will continue to so reside no matter what decisions the court renders.
This “piece of paper” (letter of guardianship) is needed to satisfy “Local School Board”, the income maintenance worker, the employer or union welfare benefits administrator, armed services recruiter, the admitting nurse in a hospital and any of the other bureaucratic personages whom these petitioners meet who insist upon “proof” of their authority to act on behalf of the child.
Unfortunately perhaps for these petitioners, Family Court has no original jurisdiction over guardianship proceedings.[4] Although the New York State Constitution’s judiciary article which was revised in 1962 made a grant of jurisdiction “as may be provided by law: the guardianship of the person of minors” (NY Const, art VI, § 13, subd b, par [7]), the Legislature has seen fit to confer upon the Family Court only: “like jurisdiction and authority as is now *3 conferred on county and surrogates courts as concerns the guardianship of the person of a minor under the jurisdiction of the court.” (Family Ct Act, § 661.)
Despite the breadth and scope of the constitutional provisions, the actual implementing legislation has given the court only the jurisdiction formerly possessed by the Children’s Court (former Children’s Ct Act, § 6, subd 1; see Committee Comments, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 661, p 691) and before the Family Court may now appoint a guardian, the child must on some other basis, already be within the court’s jurisdiction. The Joint Legislative Committee on Court Reorganization which drafted the Family Court Act had suggested that it may be desirable after observing the workings of the new court to give it jurisdiction over proceedings expressly instituted for the appointment of a guardian of a minor person (Committee Comments, op. cit.) but no such implementing legislation was passed.
Custody proceedings therefore become the subterfuge to circumvent this court’s lack of original jurisdiction. From its historical inception, judicial power under the Federal Constitution was restricted to “cases and controversies”. As observed by Chief Justice Warren in Flast v Cohen (392 US 83, 95) “those words limit the business of * * * courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.” The State courts have adopted and consistently followed that principle. (Goldsmith v Goldsmith, 25 AD2d 515, affd 19 NY2d 710.)
Properly, these proceedings belong in the Surrogate’s Court. Constitutionally, the jurisdiction of the Surrogate’s Court over infant guardianship is concurrent with that of the Supreme and Family Courts (SCPA 1709; NY Const, art VI, § 7, subd a; Family Ct Act, § 661; 26 Carmody-Wait 2d, NY Prac, § 155:8).
“In legal theory infants are wards of the State from the moment of their birth until they attain their majority and the State stands as parens patriae to infants within its borders. Until his office was abolished in 1847 (NY Const of 1846, art XIV, § 8) the Chancellor of the State of New York was the officer charged with the duty to supervise the *4 affairs of infants. The Chancellor had the power to appoint a guardian and that guardian served as the designee of the Chancellor’s official power, and hence of the power of the State, subject to the duty to report to, and the supervision of, the Chancellor (see Matter of Brown, 80 Misc 4, 5).
“With the adoption of the Constitution of 1846 and the abolition of the Court of Chancery, the Surrogate succeeded to the power of the Chancellor over the affairs of infants (see former Surrogate’s Ct Act, § 173; cf. NY Const of 1846, art XIV, § 13). The present SCPA continues the Surrogate’s power in that regard (SCPA 1701) which he shares concurrently with Judges of the Supreme and Family Courts.” (Matter of Kummer, 93 AD2d 135, 168.)
SCPA 1702 (subd 1) provides that the Surrogate’s Court shall have jurisdiction to appoint a guardian of person or property or both “[wjhere the infant is domiciled in that . county or has sojourned therein immediately preceding the application.” (Emphasis supplied.) Additionally, SCPA 1705 (subd 1) requires that process shall issue “(a) To the parent or parents * * * if such persons are within the state and their residences therein are known, or if there be none, to the grandparents who are within the county” (emphasis supplied); “(b) To the person having the care and custody of the infant or with whom he resides.”
The simplified procedures under the SCPA when contrasted with the Family Court Act show a clear legislative preference for guardianship proceedings to be instituted in the Surrogate’s Court.
While guardianship and custody are often used interchangeably there is a distinction which becomes significant in the context of proceedings such as those now before us. Custody proceedings require a best interest hearing when there is to be a change in custody (Matter of Bennett v Jeffreys, 40 NY2d 543; Matter of Lincoln v Lincoln, 24 NY2d 270) and often a full and comprehensive hearing must be held to determine the fitness of the party seeking custody and of those from whom custody is being taken. (Corso v Corso, 48 AD2d 652.) Full testimony of both parties must be taken not just of the children who wish to live with one or the other. (Bunim v Bunim, 298 NY 391.)
*5 Matter of Bennett v Jeffreys (supra) pointedly contrasted (pp 547, 548) decisions concerning custodial rights made under common-law principles from decisions made under statutes. In an earlier decision, Matter of Stuart (280 NY 245, 250), the Court of Appeals dealing with the Surrogate’s Court Act states as follows “In all cases involving the appointment of a guardian for an infant the paramount question is whether the interest of the infant will be promoted by the appointment”. (Emphasis supplied.) Matter of Stuart would appear to remain the law in New York, certainly in nonchange of custody guardianship proceedings. (See Matter of Paschen, 116 Misc 2d 421, for an extensive review and analysis.) Occasionally, there will be guardianship proceedings involving change of custody wherein the Matter of Bennett v Jeffreys standard will be applied. (Matter of Unold, 86 AD2d 612.)
A custody proceeding in the Family Court requires jurisdiction over both parents wherever they reside and a hearing to determine the best interests of the child. The letters of guardianship issued by the Family Court must be filed in the Surrogate’s Court (Family Ct Act, § 663) and can result in future proceedings being brought in either Family Court or Surrogate’s Court. Additionally, when the circumstances which led to the initial custody and guardianship decision change or the emergency passes, the Family Court is required to again hold a full hearing to deal with best interests whereas SCPA 711 (subd 9) provides for the guardian’s removal “where the interests of the infant will be promoted”.
For the reasons cited, there is no justiciable dispute or custodial controversy before the court. The petition must be dismissed and the parties referred to the Surrogate’s Court.

. AR 601-210, Sept. 1,1982, Basic Eligibility for Enlistment — (F) (2) An applicant “without a spouse” (a) who has dependents under 18 years of age who has (have) been placed in the custody of the other parent or another adult by court order as provided by State law.

. See Matter of Proios, 111 Misc 2d 252 (Radican, J.); Matter of Schlossberg, NYLJ, Oct. 24, 1974, p 20, col 4 (Sobel, S.).

. Sole exception is subdivision 3 of section 15 of the Domestic Relations Law; limited guardianship for purposes of consenting to marriage of infant under 16.