Matter of Joseph D. (2025 NY Slip Op 50662(U))

[*1]

Matter of Joseph D.

2025 NY Slip Op 50662(U)

Decided on February 27, 2025

Surrogate's Court, Suffolk County

Messina, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 27, 2025
Surrogate's Court, Suffolk County

In the Matter of the Guardianship of Joseph D., Pursuant to SCPA Article 17-A

File No. XXXXX

John McGrath, Esq.
Attorney for Petitioner
114 Old Country Road, Ste. 560
Mineola, NY 11501
Michael J. Reilly, Esq.
Attorney for Objectant
500 Old Country Road, Ste. 312
Garden City, NY 11530
Karen C. Napolitano, Esq.
Guardian ad Litem
632 Roanoke Avenue
Riverhead, NY 11901

Vincent J. Messina, Jr., S.

Before the court is a contested proceeding seeking the appointment of a guardian and standby co-guardian of the person of respondent, Joseph, an adult alleged to have a developmental disability. Petitioner is Joseph's mother and the proposed standby co-guardians are listed in the petition as cousins to respondent.
Background
Joseph's father filed objections to the petition and sought his own appointment as guardian and a hearing in this matter was held pursuant to SCPA 1754 before the undersigned's predecessor, Hon. Theresa Whelan. After this hearing, Hon. Theresa Whelan, by decision and decree each dated August 25, 2021, granted the petition to the extent that Joseph's mother, Elizabeth, was appointed the guardian of Joseph's person and Joseph's father, Robert, was appointed as standby guardian. 
Robert subsequently appealed the August 25, 2021 decree and on May 30, 2024, the Appellate Division, Second Department, issued an opinion and order finding that a new hearing was warranted as developments after the decree was issued (Joseph had gone to live with his father) had dramatically changed the relevant circumstances.
Jurisdiction has been obtained over all persons listed in the petition as necessary parties, including the subject of this proceeding, for whom an attorney for the child has been appointed. The attorney for the child has filed her final report recommending that the court grant guardianship to Robert.
Pursuant to the Appellate Division's order, a continuation of the previous trial in this matter was held on November 8 & 27, 2024. The court's determination that respondent has a developmental disability and that the appointment of a guardian was in respondent's best interest (SCPA 1750; SCPA 1750-a; Matter of Maselli, NYLJ, March 29, 2000 at 28, col. 4) was not the subject of appeal, thus the issues for trial, as set forth in a Statement of Issues so ordered by this court on October 3, 2024, were the following:
Issue #1)
Is the appointment of Elizabeth, as the SCPA Article 17-A guardian of the person of Joseph, in the best interests of Joseph?
Burden of Proof: Petitioner
Quantum of Proof: Preponderance of the credible evidence.
Issue #2)
Is the appointment of Robert, as the SCPA Article 17-A guardian of the person of Joseph, in the best interests of Joseph?
Burden of Proof: Objectant
Quantum of Proof: Preponderance of the credible evidence.
For the reasons set forth below, the court finds that it would be in the best interests of Joseph to appoint his father, Robert, as the guardian of the person and to appoint Joseph's mother, Elizabeth as the standby guardian of the person of respondent.
The Hearing
At the hearing, the court heard testimony from Elizabeth and Robert, and the parties and the attorney for the child agreed that the presence of Joseph should not be required. Based upon [*2]the credible testimony, the demenor of the witnesses, and the evidence introduced at the hearing, the court makes the following findings of fact.
After the prior hearing, in the spring of 2022, Joseph was transported from school to Huntington hospital by police car, where he stayed overnight. It appears that this was due to Joseph's aggression at school. Shortly after coming home from this overnight hospital stay, Joseph became aggressive with Elizabeth and home staff, banging on doors, pulling people's hair, and attacking them while in a car. 
As a result of this continued aggression, Joseph went to a respite residential program for a forty day program. When he was released from the respite residential program in May of 2022, he returned to Elizabeth's house. After about 2 weeks, Joseph's aggression started again, and he began to attack Elizabeth again.
In June of 2022, while Joseph and Elizabeth were driving, Joseph became aggressive and attacked her. Elizabeth immediately pulled her car off of the road and called Robert who came to meet them. The testimony of Robert and Elizabeth is not consistent as to where this meeting occurred, however it is consistent in that both stated that Robert took Joseph with him at that time, upon Elizabeth's request. Elizabeth testified that she was fearful for her safety and for the safety of the school staff, and that she needed time to figure out her next steps. 
After this last incident until the date of the hearing, Joseph has lived primarily with his father. Elizabeth does not recognize this as a change in custody, but rather refers to Joseph's "extended parenting time" spent with his father. Initially, Elizabeth would visit with Joseph twice a week, and would spend time with him on weekends and holidays, and as time passed, Elizabeth would bring Joseph home more and more often.
Joseph goes to work with his father on Thursdays, works at a pizzeria on Tuesdays, and attends a day program on the other days of the week. Elizabeth did present testimony that Joseph has been injured on his father's job site, sustaining a cut to his left eyebrow, however it appears that this injury was dealt with appropriately at the time and was minor in nature. Joseph also participates in the local Special Olympics program, and Elizabeth is a coach.
The parents disagree significantly as to how to parent Joseph. For example, Robert disagrees with Elizabeth's decisions concerning medication. Pursuant to their divorce agreement, and continuing to the present, Elizabeth has been the medical decision maker for Joseph. Elizabeth testified that she would medicate based upon the doctor's recommendations and that his medications are adjusted as needed. 
Robert feels that Elizabeth over medicates Joseph, with the aim of controlling Joseph's aggression or behaviors. Robert testified that Joseph's doctor would sometimes call him after having a consultation with Joseph, and discuss the medications prescribed, and that the doctor had at times indicated that he felt it was necessary to medicate Joseph because Elizabeth was afraid of him. Since late September of 2022, while with Robert, Joseph has not taken any of his previously prescribed medications, although Robert suspects that Elizabeth would give him medications when Joseph is with her. Elizabeth believes that due to the lack of medication, Joseph lost weight and began stimming (engaging in repetitive movements or sounds) and jargoning (talking but not making sense) more often, and that his eye contact was not as good as it used to be. Robert believes that Joseph is thriving. Robert has had very minimal interaction with Joseph's doctors.
The parents also disagree as to what activities that Joseph should be involved in. For example, for the school year of 2022-2023, Elizabeth had signed up Joseph for an additional year at school but Joseph did not continue at the school. Elizabeth testified that this was because Robert refused to bring Joseph to the school, although Robert says he had no influence over Elizabeth's decision to withdraw Joseph from school. 
As to long term care plans, Elizabeth's intention is to find a state run facility for Joseph to live in so that he can live independently and grow with his peers, while still having meaningful relationships with his family. Robert's plan would be to have Joseph live independently in a house that he owned, perhaps with his peers, so that he would not have to live in a state run facility, where he may be at risk of being thrown out. Robert expressed concerns with having Joseph living in a state run facility as the family would no longer have the same level of decision making authority with respect to Joseph.
Financially, Joseph has a self-direction annual budget of about $50,000.00, that is paid to an account that Elizabeth controls. These funds are used to pay a portion of Elizabeth's rent, and utilities, Joseph's day program, respite program, recreation, community habilitation staff, clothing, and memberships. Elizabeth is also paid a stipend from this budget for forty hours a week of services rendered to Joseph. Additionally, Joseph received over $900 monthly in Social Security Disability payments, and this money goes into an account overseen by Elizabeth. Elizabeth uses this money for things like co-payments for doctors' visits and medication, clothing, shoes and recreation. Elizabeth has claimed Joseph as a dependant on her income tax returns since she was granted guardianship, although prior to that time, the parents had alternated annually who would claim Joseph as a dependant. Elizabeth claimed Joseph as a dependant because she was the guardian, although Joseph was "on extended parenting time" with Robert, he still technically resided with her. The record is clear, however, that Robert has not received any financial support or benefits for Joseph.
When Elizabeth was asked if she could assure the court that there will be no more violent incidences she noted that in the past eighteen months there has been a positive change with Joseph, that she has been spending more time with him and that he has calmed down a lot. Elizabeth acknowledged, however, that she cannot make any guarantees, but believes she can handle Joseph if he comes back to live with her. Elizabeth intends to have Joseph attend his day program 5 days a week.
Elizabeth wants to be Joseph's guardian because she is his mother and wants what is best for him, she has been primary caretaker for his entire life, she looks to the future, and believes she has a better life long plan for Joseph. Elizabeth feels that Robert looks to the current moment and fears that his father would take him out of state. However, nothing in the record indicates that this was a present threat, and Robert's livlihood, his own ongoing business, is based in New York.
The court notes that right before the hearing, petitioner made a motion to quash a subpoena seeking medical records that had been served by Robert, and that this motion was denied on the record during the hearing.
Discussion
The party seeking guardianship bears the burden of proving, to the satisfaction of the court, that their appointment is in the best interests of Joseph (SCPA 1750; SCPA 1750-a; Matter of Maselli, NYLJ, March 29, 2000 at 28, col. 4). The determination of what is in Joseph's best interests is within the Surrogate's discretion (SCPA 1751, SCPA 1750-a).
With respect to whether the appointment of the mother or the father would be in the best interests of respondent, the court must exercise the highest degree of discretion (see Matter of Stuart, 280 NY 245) and may consider the law in the analogous area of child custody proceedings when considering the factors that comprise respondent's best interest (see In re Stevens, 17 Misc 3d 1121(A)). Such factors include (1) the original placement of the child, (2) the length of that placement, (3) the child's desires, (4) the relative fitness of the parents, (5) the quality of the home environment,(6) the parental guidance given to the child, (7) the parents' financial status, and (8) the parents' ability to provide for the child's emotional and intellectual development (Gottfried v. Gottfried, 163 AD3d 966, 966-967).
In her 2021 determination, former Surrogate Theresa Whelan, found that "the distrust and enmity between the parties, as well as their conflicting approaches to Joseph's disability and future plans, make it evident that they would be unable, at this time, to work together to provide for his needs." This Surrogate agrees.
Joseph, who has a history of aggression, seems to be thriving while living under his father's care. Elizabeth's testimony demonstrates that she understands that Joseph has been improving while living with his father and that Robert is the one who is best suited to handle Joseph if and when he becomes aggressive. In fact, other than indicating that she thinks she can handle him now that he is doing better, Elizabeth had provided the court with no explanation as to why her request for continued guardianship would be in Joseph's best interests. Meanwhile, Robert has shown a genuine interest in spending time with his son and keeping him active. Further the court cannot over look the fact that Robert has been Joseph's primary caretaker with absolutely no use of the financial supports that are intended for Joseph's benefit. Given the dramatic change in Joseph's living situation as well as his improvement in the last eighteen months, which was confirmed by both parties, the court finds that Joseph's best interests would be served by appointing Robert as Joseph's sole guardian while having Elizabeth serve a standby guardian (Gottfried v. Gottfried, supra; Matter of Maselli, supra; Matter of Stuart, supra).
The court recognizes the mother's knowledge of and familiarity with the benefits available to Joseph, as well as the common medical treatments and protocols relative to his condition. She has indicated, both by her prior actions as well as her testimony at the hearing held here, that she is committed to following that treatment path. However, based upon the evidence presented, Joseph's best interest is, and indeed has been, served by a different approach, namely that established by the father during the period beginning in June, 2022 and continuing to the present date.
Accordingly, the court's prior decree is modified to the extent that Robert is appointed the successor guardian of the person of respondent, and Elizabeth is appointed the successor standby guardian of the person of respondent. Letters of successor guardianship of the person of Joseph shall issue to Robert upon due qualification.
Amended decree signed.
VINCENT J. MESSINA, JR., Surrogate