In the Matter of MARY BUFFORD et al., Respondents, *v.* JOHN L. LASCARIS, Appellant; ALTHEA MCDANIEL et al., Respondents.

Fourth Department, June 25, 1971.

*Leonard C. Koldin (Philip C. Pinsky* of counsel), for appellant.

*Richard Hunt* for Mary Bufford and another, respondents.

GOLDMAN, P. J. This is a habeas corpus proceeding to determine custody of an infant, Montwella, who was born on September 15, 1969. This is not a matter to be resolved solely by weighing absolute, legal rights. The basic, fundamental and primary issue is whether the trial court, in the exercise of its paternal jurisdiction and with its duty to provide for the best interests of the child, properly granted custody to the petitioners. To determine this question requires an analysis of the facts.

The infant had been placed in petitioners' custody by the natural mother within two weeks of its birth. In February, 1971,

some 17 months later, the Onondaga County Department of Social Services (Department) requested petitioners to release the child into its custody. The Department interjected itself in the matter when it was contacted by the child's grandmother who expressed concern for the infant and two other children because their mother, Althea, " might be involved with drugs ". All three children were born out of wedlock. After an investigation, the Department " decided that in the best interests of the children, that she [mother] would place the children voluntarily with the Department of Social Services and go for drug therapy ". The mother made an agreement with the Department that the children were to be placed with her mother, the grandmother, until she, Althea, was able to care properly for the children. The Department assumed that the infant, Montwella, was living with her mother and the other two children, inasmuch as the mother had been receiving welfare payments for the three children, but in fact Montwella had been living with petitioners during all the time when the mother had requested and received welfare payment for the baby's support.

Prior to the birth of the child, her mother clearly and unequivocally stated that she did not want the baby. She approached petitioners and offered to give them the child and further told them that if they did not take her, " she was going to leave it at the hospital ". Two weeks after the baby's birth the mother delivered the child to petitioners and said that she " would not bother them about the baby anymore, that it was their baby and that [she] would never ask for it back ". Before the birth of Montwella the mother had had two out-of-wedlock children, whom she transferred and actually abandoned to her mother's care and custody, and she wanted to rid herself of the third expected and unwelcome child.

The trial court properly found that petitioners treated the child " with the love and attention and the regard usually to be expected of concerned parents ".

We are not dealing with the question of adoption but solely with the issue of custody. It is well settled that the paramount and controlling criterion in every custody dispute is the welfare and best interests of the child (*Matter of Lincoln* v. *Lincoln*, 24 N Y 2d 270, 272; *Finlay* v. *Finlay*, 240 N. Y. 429, 433–434). We recognize that a natural parent's right to custody is a most substantial and grave one (*People ex rel. Portnoy* v. *Strasser*, 303 N. Y. 539, 542). Possession should not be taken from a parent simply because one party may be able to offer the economic advantage of a better or more comfortable home. The

mother "has a right to the care and custody of a child, superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood" (*People ex rel. Kropp* v. *Shepsky*, 305 N. Y. 465, 468). (See, also, Report of Joint Legislative Committee on Matrimonial and Family Laws [1963]; N. Y. Legis. Doc., 1963, No. 34, p. 91.) However, even though a parent has a prima facie right to custody, it is not an absolute one. Many times the courts have sanctioned withholding the child from the parent's custody when the parent has abandoned the child (*Matter of Benning* [*Nigro*], 303 N. Y. 775; cf. *Matter of Bock* [*Breitung*], 280 N. Y. 349; *Matter of Stuart,* 280 N. Y. 245). Although the burden of proof falls upon the nonparent to rebut the presumption (*People ex rel. Scarpetta* v. *Spence-Chapin Adoption Serv.,* 28 N Y 2d 185; *Matter of Musso* v. *McAlpine,* 36 A D 2d 901), the record clearly demonstrates that the petitioners have carried fully that burden in this case.

The presumption which buttresses the primacy of status of the mother must give way where the mother's conduct in itself rebuts the presumption. The test of abandonment is "a settled purpose to be rid of all parental obligations and to forego all parental rights" (*Matter of Maxwell,* 4 N Y 2d 429, 433; *People ex rel. Anonymous* v. *Anonymous,* 10 N Y 2d 332, 335). In the instant case, the mother has, by her conduct, evidenced such a "settled purpose". Her decision to give the child away was not made on the spur of the moment but was a calculated judgment made after she discovered her pregnancy. Furthermore, during the 17 months of the child's residence with petitioners the mother showed but passing concern for the child, visited her on only a few occasions, despite the fact that she lived in the same neighborhood, and generally evidenced disinterest in the child and her welfare. Although she regularly received welfare payments for the child's support, she gave none of the money to petitioners.

"Perhaps the most significant factor to be considered in cases of this kind is the motivation of the mother in seeking return of the child" (*People ex rel. Anonymous* v. *New York Foundling Hosp.,* 17 A D 2d 122, 125, affd. 12 N Y 2d 863). It is obvious that the mother would have taken no action to secure the return of the baby had it not been for the intrusion of the Department, and the Department would not have acted had not the grandmother told it of her concern for Althea's drug involvement and the effect on the two children living with the grandmother. When the Department induced Althea to give up custody of her children, the mother included Montwella's name on the forms to cover up

the fact that she was receiving welfare funds for three children when in fact only two were living with her and her mother. Further proof that the mother never intended nor desired to place the baby in the Department's custody is demonstrated by the fact that she never informed the Department where the child was residing. She told the Department only that Montwella was in her care and custody and that " a lady named Mary, who was the child's godmother, baby-sat for all three children at times ''. This false statement is quite typical of the greater part of the material evidence testified to by the mother. The trial court was completely justified in determining that the mother had abandoned the child so that she could " be rid of all parental obligations ''.

Although the Trial Judge bottomed his decision upon the finding of abandonment, the record contains sufficient proof also to have found the mother an unfit person to have custody of Montwella. For some time prior to the birth of the baby, and thereafter, the mother was a regular user of marijuana, sleeping pills and had " tried '' heroin. She placed her two older children with her mother because " I needed treatments ''. Her addiction to drugs, her drinking, her gambling, her practice of staying out all night, sometimes as often as three times a week, clearly show that she is unfit to resume the obligations of parenthood. The mother's life style has indeed been a sordid and unstable one. It is speculative as to when, if ever, the mother will be capable or desirous of assuming the responsibilities of motherhood. If Althea's future is to be judged in part by her past, the baby should not be required to risk the damage to her welfare by removing her from the kind, affectionate and considerate custody of the petitioners.

The judgment discharging the child from the care and custody of the respondents in favor of the petitioners should be affirmed.

MARSH, WITMER, CARDAMONE and HENRY, JJ., concur.

Judgment unanimously affirmed without costs.