OPINION OF THE COURT
Guy P. De Phillips, J.
Frederick W. and Natividad V. were placed with the Commissioner of Social Services on or about December 19, 1974, following a finding that they were neglected. These two placements were subsequently extended by this court with the most recent extensions of placement to expire on June 18, 1983. On June 13, 1983, five days prior to the expiration date, the petitioner commissionér initiated supplementary proceedings by filing a petition for extension of placement with respect to each child. Section 1055 of the Family Court Act provides in pertinent part:
*336 “(b)(i) Placements under this section may be for an initial period of eighteen months and the court in its discretion may make successive extensions for additional periods of one year each. A petition to extend a placement accompanied by supporting affidavits or reports shall be filed at least sixty days prior to the expiration of the period of placement, except for good cause shown.
“(ii) No placement shall be extended * * * except upon a hearing held concerning the need for extending * * * the placement. Such hearing shall be held upon the petition filed by the person, agency or institution with whom the child was placed * * *
“(iii) Notice of the hearing and a copy of the petition and any supporting affidavits * * * shall be served by the petitioner * * * upon the agency supervising the care of the child on behalf of the agency with whom the child was placed, upon the child’s parent or other person responsible for the child’s care * ^ * each of whom shall be a party entitled to participate in the proceeding. Service of notice of the hearing shall be made in such manner and on such notice as the court may, in its discretion, prescribe.” (Emphasis supplied.)
Petitioner’s endeavor to comply with the notice requirements of section 1055 (subd [b], par [iii]) as found in the record consists of the following: an indorsement entry on June 13, 1983 reflecting that the intake Judge directed that a summons be served on respondent returnable June 16, 1983 and two orders to show cause submitted by petitioner’s counsel respectively relating to the child Frederick W. and the child Natividad V. Both orders to show cause reflect that the hearing to be held concerns “why an order should not be granted permitting the filing of the petition for extension of placement and extending the placement of the [respective] child for a period of twelve months.” (Emphasis supplied.) It is clear the hearing to be held embraced two critical issues — one involving the necessity for the petitioner to demonstrate “good cause” for the late filing of the petitions within the 60-day period prior to the expiration of placement. If no “good cause” was shown, then the petitions were untimely filed. Upon “good cause” being advanced, the issue of whether the placements should be *337 extended would be reached. Although the return date, i.e., the scheduled date of the hearing as reflected in the indorsement, is June 16, 1983, both orders to show cause set forth the return date as June 17,1983. Both orders to show cause provide for “service of a copy of [such orders] and all supporting papers, by ordinary mail, on all parties entitled to notice of an extension of placement petition pursuant to Family Court Act § 1055(b)(iii) on or before the 16th day of June, 1983.” Neither order to show cause is dated. More importantly, only the order to show cause involving the child Natividad V. is signed by the Family Court Judge who presided at intake on June 13,1983. The order to show cause with respect to the child Frederick W. is unsigned.
On June 16,1983, these two supplementary proceedings came on for a hearing in Part VI. Petitioner’s proof was directed toward demonstrating that extensions of placement were in the best interests of the children and that the child Natividad V. is now 18 years old and consents to such extension. At such time, this court granted the extensions of placement for one year. On June 17, 1983, the court on its own motion reopened the hearing, temporarily suspended the orders of June 16, 1983 extending placement for each child for one year and substituted therefor a limited extension of placement to July 18, 1983, the new adjourned date of the hearing. This action was prompted by the court’s concern that at the June 16, 1983 hearing no proof of service of the petitions on the natural mother Peepsie M., the respondent, as set forth in the orders to show cause was submitted by petitioner, an elucidation of “good cause” for the late filing of the petitions had not been advanced and the return date set forth in the orders to show cause was June 17, 1983. Neither on June 16 nor June 17, 1983 did the mother Peepsie M. appear. On both occasions the petitioner did not present proof of service of copies of the orders to show cause with the petitions and any supporting affidavits upon the mother. Also on June 17, the court noted the incongruity presented by the fact that the petitions for extension of placement listed the residence of Peepsie M. as “[u]nknown” whereas the method of service sought by petitioner to be effected upon Peepsie as delineated in the orders to show cause prepared *338 by petitioner was “by ordinary mail”. The court specifically noted.that the hearing to be held on July 18,1983 was to be limited to the “issue of good cause for failure to timely file extension of placement petitions and whether notice [was] given as required by the order to show cause”. Petitioner’s motion on June 17, 1983, for leave to serve notice of the adjourned date of hearing on the natural mother “by ordinary mail at last known address”, was granted.
Subsequently, at the hearing held on July 18, 1983, petitioner submitted proof of service by certified and regular mail of notice of such hearing on the mother Peepsie M. at two different addresses. Further, testimony was elicited that Peepsie in response to this notice contacted Little Flower Children’s Services and expressed an interest in her child Natividad V. Peepsie M. did not appear on the adjourned hearing date, July 18, 1983. This court has now determined to dismiss the supplemental petition for the extension of placement regarding the child Frederick W. and to remand him to the Commissioner of Social Services for such further proceedings as the commissioner is advised to take. The supplemental petition respecting Natividad V. was granted and the order extending his placement for one year, to expire on June 18, 1984, was reinstated on July 18, 1983. However, as the record contains no elucidation of the cause which prompted the late filing of the petition other than a conclusory assertion in an affidavit that such late filing was due to “clerical error”, the court has determined in the interests of justice to again temporarily suspend the extension of placement order of June 16, 1983 respecting Natividad. The placement of Natividad is temporarily extended to August 18,1983 and the matter is set down for a hearing on such date on the issue of “good cause” for the late filing.
The rationale for these disparate results follows: Section 1055 (subd [b], par [iii]) of the Family Court Act requires joinder of the child’s parent as a party to an extension of placement proceeding. The basis for the standing afforded the parent under this statute emanates from the parent’s right to custody of the child which right continues unless terminated, albeit it is temporarily abrogated for the period of placement. When the child attains the age of 18
*339 years, such child is no longer an “infant” or “minor” (Family Ct Act, § 119, subd [c]) and in the context of custody is free to determine his or her own destiny (see Family Ct Act, §§ 651, 1055, subd [e]; cf. Family Ct Act, § 1012, subds [e], [f]). With respect to a child under 18 years of age the child’s parent is a necessary party to the extension of placement proceeding due to the statute’s expressly requiring joinder and the fact that such joinder is founded on the parental right to custody of the infant or minor child. However, where the child has attained the age of 18, the child’s parent, while a proper party to the proceeding pursuant to the statutory requirement, is no longer a necessary party. This conclusion derives from the fact that the status of all those entitled to notice of the extension of placement hearing apart from the parent and child arises subsequent to and by virtue of the placement of the child. The parent-child relationship precedes the occurrence of placement and there inheres in this relationship a prima facie right to custody, although it is not an absolute right (see Matter of Bufford v Lascaris, 37 AD2d 128, 130). The custody and control of children is subject to State regulation, “the state standing in relation of parens patriae to infants and being vitally concerned with their welfare. The authority of the state as parens patriae to infants covers a wide held, including such subjects as the custody * * * of infants * * * and disposition of * * * neglected * * * children” (28 NY Jur, Infants, § 3). The cessation of the prima facie custody right of the parent upon the child’s attaining 18 years of age impels the conclusion that the parent is no longer a necessary albeit a proper party to a section 1055 extension of placement. “A parent may not be awarded the custody of a child over 18 years of age (Domestic Relations Law, §§ 2, 240; Blauner v Blauner, 60 AD2d 215, 281; Silverman v Silverman, 50 AD2d 824)” (Toppel v Toppel, 67 AD2d 628; see Markland v Markland, 67 AD2d 940; see, also, Family Ct Act, § 614, subd 1, par [a]). No prejudice to the parent arises in such situation because the parent retains the right to seek under section 1061 of the Family Court Act to stay, modify, set aside or vacate any order issued in an article 10 proceeding and under section 1062 of the Family Court Act to terminate placement.
*340 No jurisdiction was obtained by the petitioner over the children’s parent Peepsie M. in these extension of placement proceedings. At the hearings held on June 16 and June 17, 1983, petitioner failed to supply the court, with affidavits of service showing service of notice of the section 1055 hearing with a copy of the respective petitions and any supporting affidavits or reports on the natural mother. Upon request by the court on June 17, for submission of such affidavits, petitioner’s counsel responded that they were “[n]ot in [counsel’s] possession at this time”. The court scheduled a further hearing on July 18, 1983 to afford petitioner an opportunity to demonstrate compliance with the statutory requisite notice on the children’s parent, the mother. Although the court prescribed the manner of service and the extent of notice in the signed order to show cause with respect to the proceeding involving the child Natividad, the unsigned order to show cause in the proceeding involving the child Frederick could not be relied upon as empowering a similar endeavor to effect service. For the purposes of this analysis, it is assumed that the failure to obtain the intake Judge’s signature on the order to show cause in the companion proceeding was an oversight which could be corrected nunc pro tune as there was no lapse in the court’s subject matter jurisdiction, i.e., the petition was filed prior to the expiration of placement and a timely temporary order extending the placement was issued. The incongruity presented by the fact that process was returnable on June 16, 1983 and the case came before the court on June 16 (the initial hearing date) while the orders to show cause specified June 17, 1983 as the return date, was ameliorated by the fact that on June 17, 1983, the court on its own motion placed these two proceedings back on the calendar that day.
The second purpose stated by the court in scheduling these matters for July 18,1983, was to afford petitioner an opportunity to advance “good cause” for the late filing of the supplemental petitions for extension of placement. As the petitions were filed less than 60 days prior to the expiration of the period of placement, it was incumbent upon petitioner to demonstrate “good cause” for the late filing. Failure to show “good cause” results in the dismissal of the petitions as untimely filed.
*341 At the conclusion of the hearing on June 17, 1983, petitioner’s counsel’s request for permission to send notice of the July 18, 1983 hearing date by ordinary mail to the children’s mother Peepsie M. at “any last known address contained in the record” was granted. To reiterate: the July 18, 1983 hearing was restricted to the issues of proof of service upon the mother of notice of the extension of placement hearing and the showing by petitioner of “good cause” for the late filing. The need for extending or continuing the placement was the subject of the July 16, 1983 hearing and had already been determined by the court. No application was made on June 16 or June 17, 1983 to reopen the hearing for a de nova determination of such need and for a further opportunity to effect service upon the mother of notice of a hearing on that need together with copies of the two petitions “and any supporting affidavits or reports” (Family Ct Act, § 1055, subd [b], par [iii]).
The orders to show cause properly reflected the aforementioned statutory requirement that notice of hearing together with the petitions for extension of placement and supporting papers be served “on all parties entitled to notice of an extension of placement petition pursuant to Family Court Act § 1055 (b)(iii)”. On July 18, 1983 petitioner did not submit proof of service in compliance with the statutory mandate, but merely submitted proof of service of notice of the July 18, 1983 hearing date on Peepsie M. by certified and regular mail at two prior addresses. No proof of service of copies of the petitions and any supporting affidavits or reports on the mother was submitted. It was stated by the attorney for the Little Flower Children Services Agency at the July 18, 1983 hearing that the mother Peepsie M. called the agency, acknowledged receipt of notice of the July 18,1983 hearing and expressed an interest only in the child Natividad. Now, for the first time, petitioner’s counsel acknowledged that the agency did not serve the mother with the orders to show cause. It was further proffered that this omission was due to the fact that the agency did not have any address for the mother. In response, the court queried counsel as to how the agency was able to effect service by notice by mail with respect to the July 18, 1983 hearing, but not with *342 respect to the orders to show cause. Petitioner’s counsel responded that the agency obtained the two addresses from the case record. The court simply notes that if such knowledge could be gleaned from the agency’s case record for purposes of effecting service of notice on the mother of the July 18 hearing, it could have been similarly obtained to effectuate service of the orders to show cause with copies of the petitions and supporting papers as required by section 1055 (subd [b], par [iii]) of the Family Court Act.
In light of petitioner’s failure to serve the parent Peepsie M. as mandated by statute (§ 1055, subd [b], par [iii]) the petition to extend the placement of the child Frederick W. who is less than 18 years old must be dismissed for lack of jurisdiction over a necessary party (see CPLR 1001; see, also, Matter of Lyndell C. R., 102 Misc 2d 723, 725).
However, during the extension of placement hearing on June 16 and the “good cause” hearing on July 18, 1983, petitioner elicited testimony tending to show that Frederick W. is an abandoned child. There was testimony that the mother although released from prison in 1982 contacted the agency in October of that year and left a message asking about the children Frederick and Natividad. Apart from this one telephone call there was no endeavor by the mother to contact the agency prior to the court hearing on June 16, 1983. Judicial notice is taken that according to the official records of the Division of Criminal Justice Services, Peepsie M. was incarcerated in Bedford Hills Correctional Facility and paroled on January 20, 1982. According to petitioner, the agency’s attempt to contact the mother at the telephone number she gave in October, 1982 was unavailing. Since that one phone call in October, 1982, over six months ago, it appears that Peepsie M. has not shown any interest in maintaining a parental relationship with her son Frederick W. In the absence of in personam jurisdiction over the mother, Peepsie, the court may not resort to the dispositional alternative of finding Frederick to be an abandoned child under section 1059 of the Family Court Act. Accordingly, the court remands Frederick to the care of the petitioner Commissioner of Social Services with a direction that the commissioner take such further action *343 as he deems advisable to protect the child’s interests. (See Matter of Susan F., 59 AD2d 783.)
As noted, Peepsie is not a necessary party to the extension of placement involving Natividad. Accordingly, the issue of whether petitionenhas shown “good cause” for the late filing of that petition is reached. The reason given for the late application to extend placement is set forth in the affidavit of the agency’s caseworker, Ms. Berenberg, sworn to May 25, 1983, accompanying the petition, as follows — “The petition to extend placement in this case is being submitted less than sixty days prior to the expiration of the current placement for the following reasons: Owing to a clerical error which has now been corrected, we did not discover that this Court extension was due until 5/20/83”.* In utilizing the phrase “good cause”, the Legislature implicitly acknowledged the existence of “bad cause”. Is the clerical error alluded to above sufficient to constitute “good cause”? The issue is, in the court’s view, a close one. Analogizing such error to law office failure, it is noted that the Legislature has recently enacted CPLR 2005 (L 1983, ch 318) to restore discretion to the court to excuse delay or default resulting from such failure in the interests of justice under appropriate circumstances. The obvious aim of this legislation is to relieve the overly harsh results emanating from the Court of Appeals holdings in Barasch v Micucci (49 NY2d 594) and Eaton v Equitable Life Assur. Soc. (56 NY2d 900) under circumstances where the delay or default is not willful or is not characterized by gross negligence or patent incompetence. (See NYLJ, June 24,1983, p 1, col 3.) No further elucidation of the clerical error which prompted the late filing was given by petitioner on July 18, 1983, although that was one of the two purposes for which that hearing was scheduled. The court, in the interests of justice, on its own motion, sets this issue down for a hearing on August 18, 1983, to afford petitioner a further opportunity to present particulars as to the nature of the “clerical error” which prompted the late filing of the Natividad petition.
Three final observations are made: first, the invocation of the phrase “best interests of the child” may not serve to *344 excuse a failure to observe the requirements imposed by the due process clause and the legislative will as embodied in section 1055 of the Family Court Act; second, the adversarial nature of the American legal system requires that the letter and the spirit of section 1055 be adhered to lest practice under said section degenerate into a pro forma and haphazard review procedure at odds with due process and ultimately with the very interests which article 10 of the Family Court Act is designed to protect; third, the court must be mindful that under the guise of statutory construction it does not transgress the legislative prerogative.
The matter is set down for a “good cause” hearing respecting the Natividad petition in accordance with the aforesaid in Part VI on August 18, 1983.

 No copy of either petition plus supporting affidavits or reports was served on the mother.