In the Matter of MICHAEL J. NASSAR, as Commissioner of Oneida County Department of Social Services, on Behalf of THOMAS B. SANTMIRE, Appellant, v LINDA SANTMIRE, Respondent.

Fourth Department, March 6, 1984

**APPEARANCES OF COUNSEL**

*Richard A. Koehler* for appellant.

*Legal Aid Society of Oneida County* (*Deirdre Parke* of counsel), for respondent.

**OPINION OF THE COURT**

MOULE, J.

The question presented on this appeal is the relevance and materiality of respondent's mental condition subsequent to the filing of a petition for an extension of placement under article 10 of the Family Court Act at an extension of placement hearing.

Respondent in this proceeding is the mother of two children, Brian and Tommy. Tommy was temporarily removed from his mother's custody 10 days after he was born

because of suspected neglect and placed in the custody of the Oneida County Department of Social Services (Social Services) on February 22, 1974. Based upon a finding of neglect on the part of respondent and the maternal grandparents, custody was awarded to Social Services on May 6, 1974 and Tommy was placed in a foster home. Social Services subsequently sought and obtained 10 extensions of placement, the last of which expired on June 11, 1982, when Family Court denied the application which is the subject of this appeal. Tommy remained in the same foster home in which he was originally placed until June, 1982. During that time respondent visited periodically with the child.

On January 19, 1982 Social Services brought a proceeding for extension of placement based upon the alleged continued inability of respondent, age 25, to care for the child. A Family Court summary for extension, prepared by a caseworker and submitted in conjunction with the petition, suggested that permanent neglect should be considered "as soon as feasible based on [the] mother's inability to function independently as a parent". The petition was based principally on the following factors: previous psychiatric and psychological reports which indicated respondent's I.Q. to be 53; respondent's inability to care for Brian, age six, as evidenced by his incontinence, body odor and lack of cleanliness at school; her lack of income;[1] and her inability to handle money or to shop for any necessary items. A certified psychologist examined respondent on March 17, 1982 and a psychiatrist evaluated her on April 6, 1982. Both had previously examined respondent in June, 1980.

A hearing was held on June 11, 1982. The caseworker testified that she had visited with Tommy, while his mother was present, at the foster home five times since January, 1981. She testified that on these occasions she had observed respondent playing with her children and that respondent frequently would play by herself pulling a wagon full of toys around the yard. She further stated that respondent was previously involved in an occupational

---

1. Respondent lives with her parents. Her father, 74 years of age, is the head of the family unit and responsible for all shopping, payment of bills and transportation.

training program, but had not participated in it since January, 1981. She also testified that, based upon her observations of respondent at the foster home, respondent's personal hygiene could be greatly improved.

Petitioner next called the psychiatrist who had previously examined respondent to testify regarding her psychiatric condition. After his expert qualifications were established, respondent's counsel objected to the psychiatrist's testifying to respondent's psychiatric condition on the grounds that the 1980 examination was conducted prior to the last extension of placement hearing and the April 6, 1982 examination was not conducted until after the date the petition was filed. The court sustained the objection; the psychiatrist was then excused. Since the psychologist also did not examine respondent until after the date the petition was filed, he was not called to testify, although the record shows that he was present in the courtroom.

Petitioner initially rested his case after the psychiatrist was not allowed to testify, but then received permission to reopen it and called respondent and her father as hostile witnesses. Petitioner questioned respondent concerning her ability to count, but was otherwise prohibited from asking what the court referred to as "questions that [petitioner] would have asked the psychologist would he have been able to testify". Petitioner also questioned respondent concerning her visits with Tommy, her care for Brian and her living situation at home. Respondent's father was questioned regarding his daughter's visits with Tommy, her activities around the house, Brian's personal hygiene problems at school and the living situation at his home. At the close of the testimony, respondent moved to dismiss the petition based upon petitioner's failure to establish sufficient reasons for the extension of placement. The court granted the motion and released the child to the custody of respondent and the maternal grandparents.

Petitioner contends that Family Court erred in excluding the doctors' expert testimony on respondent's condition subsequent to the filing of the petition.[2] Respondent argues that, since her examinations occurred after the petition

---

2. Petitioner does not contend that the court erred in not allowing the doctors to testify to their examinations of respondent in June, 1980.

was filed, the doctors' testimony concerning respondent's condition was irrelevant and, hence, properly excluded by the court. Respondent also argues that, even if the court erred in refusing to allow the doctors to testify, the error was harmless since respondent's limited capabilities were fully before the court.

Any relevant and material evidence may be admitted at an extension of placement hearing (Family Ct Act, § 1046, subd [c]). Moreover, Family Court may not extend placement of a neglected child unless there is a showing of present inability of the parent to care for the child and that continued placement is in its best interests (*Matter of Sunshine A. Y.*, 88 AD2d 662; *Matter of Yolanda C.*, 74 Misc 2d 884, 886; see, also, *Matter of Cynthia B.*, 39 AD2d 941; *Matter of Kenneth G.*, 39 AD2d 709). Petitioner argues that, since respondent's present ability to care for the child was in question, respondent's mental state subsequent to the filing of the petition was relevant to the court's determination. This position is supported by the Court of Appeals decision in *Matter of Darlene T.* (28 NY2d 391, 395), where the court stated that Family Court, in determining an appropriate disposition, should consider the parent's conduct and other conditions which arose after the filing of the petition, and after the fact-finding hearing as well.[3] Significantly, respondent cites no authority holding that the doctors' testimony was irrelevant solely because it was based on postpetition examinations.

This position is also supported by the legislative intent of article 10 of the Family Court Act. Section 1011 of the Family Court Act provides that article 10 is "designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being." Family Court's refusal to allow the doctors to testify to respondent's mental condition after the filing of the petition and what effect it may have had upon respondent's ability to care for her child does not comport with this legislative mandate.

---

**3.** While the hearing at issue in *Matter of Darlene T.* (28 NY2d 391) was an initial dispositional hearing following a finding of neglect, the evidentiary rules and decisional considerations of an extension of placement hearing are similar to those of an initial dispositional hearing (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act, § 1052, p 425).

Respondent's argument that any error in not allowing the disputed testimony was harmless should also be rejected. The two doctors' testimony was relevant and material to petitioner's case. The record shows petitioner was originally going to call only the caseworker and the two doctors in his case-in-chief. The court's ruling severely restricted petitioner's case since he was not able to directly elicit from respondent the same type of information he intended to bring out in examining the doctors.

The order should be reversed and the matter remitted for a new extension of placement hearing; in the interim, custody of the child shall remain with the respondent and the maternal grandparents.

DILLON, P. J., HANCOCK, JR., DENMAN and GREEN, JJ., concur.

Order unanimously reversed, without costs, and matter remitted to Oneida County Family Court for a hearing, in accordance with opinion by MOULE, J.