# In the Matter of BELINDA B. and Others, Infants.

Fourth Department, January 24, 1986

### APPEARANCES OF COUNSEL

*John J. Rivoli (Ardeth Houde* of counsel), for *Law Guardian,* appellant.

*Milo Tomanovich (James Paulino* of counsel), for Monroe County Department of Social Services, appellant.

*Edward J. Nowak (Joan Kohout* of counsel), for respondents.

### OPINION OF THE COURT

GREEN, J.

Given the extraordinary circumstances presented in this proceeding to extend foster care placement, Family Court erred in failing to consider whether the best interests of the children would be served by immediately returning them to the respondents, their natural parents. Therefore, we remit this matter to Family Court for such a determination.

This appeal is taken by the childrens' Law Guardian from an order of Monroe County Family Court which dismissed the petition brought by the Monroe County Department of Social Services (DSS), pursuant to Family Court Act § 1055 (b), seeking a 12-month extension of foster care placement for respondents' two children, Belinda, born April 9, 1973 and Carol Sue, born January 7, 1977.* The children were placed in foster care in January 1979 and were found to be neglected in March 1979. Prior extensions of foster care placement were granted in September 1980, March 1982, June 1983 and August 1984. The present extension was scheduled to expire February 20, 1985.

Belinda is presently in the care of foster parents residing in Shortsville, New York. Three older children reside with them. Belinda visits with respondents, her natural parents, every other weekend in an unsupervised setting and is transported to and from Rochester by a DSS foster care worker.

Carol Sue is presently in the care of her foster parents, the

---

* We note that in a prior related appeal, we reversed Family Court's dismissal of the DSS petition to terminate respondents' parental rights on the ground that DSS had established a prima facie case of permanent neglect *(Matter of Barry Timothy B.,* 106 AD2d 898). We remitted the matter to Family Court for further proceedings. At oral argument on this appeal, counsel informed us that the fact-finding hearing in the guardianship matter has been completed but that the court has not yet rendered a decision and represented that it will not do so until we resolve the instant appeal.

We also note that the DSS has not submitted a brief on the instant appeal but was permitted to present oral argument and join in the Law Guardian's brief. By stipulation, this appeal is limited to Belinda and Carol Sue. Barry, Jr., born August 9, 1974, was returned to respondents' custody in September 1984 by order of Family Court.

Bensons, who live in Westfield, Pennsylvania, about a 2½ hour drive from respondents' home in Rochester. The Bensons and respondents have been friends since Carol Sue was born and at one time the two families lived together in the same house. The Bensons have seven other children, some with serious behavioral problems. Three of the Benson's teen-age children now live at home.

The fact-finding hearing took place on March 19, April 15 and May 22, 1985. Eight witnesses testified: Mr. and Mrs. Benson, Mrs. B., Sally Truscott (a DSS foster care worker), Constance Hardes (a friend of respondents), and three mental health professionals—Dr. Martin Kaufman, a clinical psychologist, and Marsha Tobin and Sandra Cohen, two psychiatric social workers at the Convalescent Hospital for Children.

In addition to the facts already set forth, Mr. and Mrs. Benson highlighted what was referred to as the "highchair incident" in which Carol Sue apparently hit Barry, Jr., with the chair while visiting the respondents. The Bensons also testified about other incidents to demonstrate that while Carol Sue behaved properly in their house, she often misbehaved and retaliated against Barry, Jr., while visiting the respondents.

Mrs. B. confirmed that Carol Sue and Barry fight, but stressed that Carol Sue and Belinda get along nicely, that each child has their own room when they visit, and that they have made friends in the neighborhood. Mrs. B. noted that Carol Sue missed six scheduled weekend visits because the Bensons were unable to comply and was delivered late for three other visits. These visits were rescheduled and made up, but this prevented Carol Sue from being at the respondents' home when Belinda was also there as was envisioned in the expanded weekend visitation plan.

Perhaps the most knowledgeable witness was Dr. Kaufman. He was the only professional who met with the Bensons, the respondents and the children. Although called by the petitioner, he conducted his evaluations at respondents' request. He concluded that "in all my contacts with the [respondents], including my meeting with Barry Jr., I found no evidence that would suggest an incapacity by the [respondents] in parenting of their children during the past year." He recommended that Carol Sue return home while Belinda remain in foster care. He suggested, however, that Carol Sue's return be gradual by spending increasingly more time with the respondents during

the transition while continuing to reside with the Bensons in the interim. Dr. Kaufman's recommendation that Belinda remain in foster care was admittedly unclear and was based to a large extent on Belinda's strong attachment to her foster family.

Marsha Tobin, Belinda's therapist, also testified that Belinda is comfortable with her foster family and did not want to be placed with respondents. Belinda's self-image was improving, she was more assertive and "fairly happy".

Sandra Cohen, assigned to work with the respondents since June 1984 testified that most of her sessions involved issues relating to Barry, Jr., who was returned to respondents' custody in September 1984. Respondents missed some therapy sessions and, in her opinion, their progress was "very limited".

Both Carol Sue and Belinda were interviewed by the court in camera. Belinda expressed displeasure at visiting respondents because of the distance and the disruption of her schedule. She did not want to live with respondents even if Carol Sue was returned. Belinda admitted fighting with Barry, Jr., and stated Mrs. B. sometimes hit him. Carol Sue told the court that she likes her foster home, gets along well with the other Benson children, likes Belinda but not Barry, Jr., and would rather live with the Bensons than the respondents.

Family Court dismissed the petition for an extension of placement based upon its finding that petitioner (DSS) failed to establish by a preponderance of the evidence that the respondents were presently incapable of caring for their children. The court also noted the presumption which equates a child's best interests with being raised by a natural parent. Petitioner appeals. We granted a stay of enforcement of the order dismissing the extension petition pending resolution of this appeal.

On this record, Family Court correctly determined that petitioner failed to establish by a preponderance of the evidence that respondents were unable to parent. There was no testimony presented that either child would suffer physically or emotionally if returned to respondents. No expert testimony was presented that any parental conduct during visitation had an adverse impact on either child. Rather, the theory of the DSS was that respondents could not meet the needs of the children because they were attached to their respective foster parents and had stated their preference to remain in those foster homes. The agency failed to establish, however,

that the needs of the children could not be met in respondents' home. Moreover, the fact that Barry, Jr., was returned to respondents' custody in 1984 provides the best evidence of respondents' parenting ability. According to Dr. Kaufman, Barry, Jr., is the most difficult of the three children to manage. In demonstrating an ability to raise the child posing the most serious behavioral problems, respondents have demonstrated positive parenting skills. Thus, petitioner failed to establish that respondents were presently unable to care for their children.

The appropriate test to determine a petition for extension of foster care placement is whether the petitioner can establish, by a preponderance of the evidence, the continued inability of the parents to care for the children and that continued placement would be in the best interests of the children (Matter of Sunshine A. Y., 88 AD2d 662; Matter of Kenneth G., 39 AD2d 709; Matter of Yolanda C., 74 Misc 2d 884, 886; see also, Matter of Nassar v Santmire, 99 AD2d 377, 380). The burden of proof in the first instance is upon the party seeking continued placement (Matter of Darlene T., 28 NY2d 391, 394; Matter of Carmen, 37 AD2d 629). Respondents argue that once Family Court determined petitioner did not establish their present inability to parent, there was no need to consider the best interests of the children because once the petition was dismissed respondents were automatically entitled to the return of their children. We disagree.

The Family Court Act does not define the standards for determining whether foster care placement should be extended. The statute simply authorizes the court to make successive extensions "in its discretion" (Family Ct Act § 1055 [b] [i]). The Court of Appeals has held that the best interests of a child must be considered where there is a "judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child" (Matter of Bennett v Jeffreys, 40 NY2d 543, 549). Although the natural parent in Bennett voluntarily placed her child with a third party, the concerns underlying Bennett are at least as compelling in cases, such as the instant one, where the children were initially placed in foster care based on a finding of the natural parents' neglect. Hence, under Bennett the best interests of the children should be considered before they are returned to their natural parents.

These children have been in foster care for over six years. Also, there is presently pending in Family Court a proceeding in which our court has already determined that the petition states a prima facie case of permanent neglect.

Also, we recognize that there are situations, as here, when although the natural parents are now proved fit, they may not be entitled to the immediate return of their children without first considering the best interests of the children *(see, e.g., People ex rel. Ninesling v Nassau County Dept. of Social Servs.,* 46 NY2d 382, 388-390; *People ex rel. Wilson v Wilson,* 56 AD2d 794).* For example, a dismissal of an extension petition that has been filed late (not a rare occurrence) need not always result in the automatic return of the children to the natural parents. Family Court has ample authority to prevent a result that is demonstrably harmful or dangerous to the child *(see, e.g., Matter of Susan F.,* 59 AD2d 783; *Matter of Frederick W.,* 120 Misc 2d 335; *Matter of Lyndell C. R.,* 102 Misc 2d 723; *see also,* Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Part 1, Family Ct Act § 1055, pp 445-446, and 1984 Supplementary Practice Commentary, 1986 Pocket Part, pp 66-68).

Also, we note that in instances where a parent voluntarily relinquishes custody and then properly revokes his or her consent, that parent is not necessarily entitled to the immediate return of the child. For example, in a proceeding to revoke a surrender instrument in the case of a child placed in an adoptive home, Social Services Law § 383 (6) provides: "[T]he parent or parents who surrendered such child shall have no right to the custody of such child superior to that of the adoptive parents, notwithstanding that the parent or parents who surrendered the child are fit, competent and able to duly maintain, support and educate the child. *The custody of such child shall be awarded solely on the basis of the best interests of the child,* and there shall be no presumption that such interests will be promoted by any particular custodial disposition." (Emphasis added.) If natural parents are not entitled to the immediate return of their children without consideration of the child's best interests when the parents voluntarily relinquish custody *(see also,* Domestic Relations Law § 115-b [3] [d] [ii]-[v]), there is no reason not to apply the best interests test in situations, as in the instant appeal, where the children have been taken from the respondents based on a finding of neglect. This is particularly so in light of Family Court Act § 1011 which provides that article 10 is "designed to establish

procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being."

Moreover, as this case illustrates, there are also instances in which natural parents may be entitled to the return of their children, but not necessarily immediately, or all at once. We in no way intend here to prejudge the best interests of Carol Sue and Belinda *(see generally,* Hershkowitz, *Due Process and the Termination of Parental Rights,* 19 [No. 3] Fam LQ 245 [1985]; Wald, *State Intervention on Behalf of "Neglected" Children: Standards for Removal of Children From Their Homes, Monitoring the Status of Children in Foster Care, and Termination of Parental Rights,* 28 Stan L Rev 623 [1976]). We note that Dr. Kaufman, the only qualified mental health professional who interviewed both children, respondents and both sets of foster parents, recommended that only Carol Sue be returned to respondents and only on a gradual basis with increased visitation and intensive counseling to ease the transition. Dr. Kaufman asserted that "the most important thing is to be able to proceed in a way that [provides] safeguards * * * all the way along the line." He also suggested that respondents and Carol Sue were in need of further counseling.

Thus, Family Court should have determined whether the best interests of these children would be served by their immediate return to the respondents. Although we may make such a determination ourselves *(Matter of Sunshine A. Y.,* 88 AD2d 662, *supra),* we chose not to do so on this record because Dr. Kaufman, the only witness who interviewed each of the concerned parties, admitted his recommendations were confused and unclear. Hence, further evidence is required. Thus, we remit this matter to Family Court for a hearing to determine whether the best interests of Carol Sue and Belinda would be served by their immediate return to respondents *(see, Matter of Suzanne N. Y.,* 66 AD2d 723, 724, 54 NY2d 824; *Matter of Jean Yvette E.,* 59 AD2d 907; *see also, Matter of Boyles v Boyles,* 95 AD2d 95, 100; *Matter of Bannister v Bannister,* 81 AD2d 913, 914).

In doing so, we note our disapproval of Family Court's management of the extension of placement proceeding. Given the fact that a permanent neglect proceeding was pending at the time Family Court entertained the extension petition, the court could have avoided the procedural snarl we now find this case in, simply by extending the placement with a temporary order until the permanent neglect proceeding was finally

resolved *(see,* Family Ct Act § 1055 [b] [iv]). In addition to such a temporary continuation, the court also could have directed the Social Services Department to undertake diligent efforts to encourage and strengthen the parental relationship (Family Ct Act § 1055 [c]). While the statutory scheme may permit an extension proceeding to occur simultaneously with a guardianship proceeding, judicial economy certainly would not encourage this result and the Legislature may be well advised to reexamine the relevant statutes to prevent such a procedural quagmire. Moreover, it is highly unlikely that the DSS could establish by clear and convincing evidence that respondents permanently neglected their children in the guardianship proceeding *(see, Santosky v Kramer,* 455 US 745), given the finding in the extension proceeding 'that the DSS could not establish by a mere preponderance of the evidence that respondents were presently unfit to parent. The best interests of the children must be considered in the context of the extension of placement proceeding.

Accordingly, the order should be modified by affirming the finding that petitioner failed to establish respondents' present inability to parent and remitting the matter to Family Court for a hearing to determine the best interests of each child, and we order a custodial disposition on that ground. The stay previously granted is continued until Family Court decides what custodial arrangement is in the childrens' best interest.

DOERR, J. P., BOOMER, O'DONNELL and SCHNEPP, JJ., concur.

Order unanimously modified, on the law, by remitting the matter to Monroe County Family Court for a hearing, in accordance with opinion herein, and as modified, affirmed, without costs.