Matter of Kenyon P. (2005 NY Slip Op 50879(U))

[*1]

Matter of Kenyon P.

2005 NY Slip Op 50879(U)

Decided on May 26, 2005

Family Court, Kings County

Elkins, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 26, 2005

Family Court, Kings County
In the Matter of Kenyon P. and Rasheem P., children under the age of eighteen, alleged to be neglected by Lakinya D., Respondent.
NN 17096-7/02

Lee H. Elkins, J.
The Administration for Children's Services [ACS] filed a petition to extend placement of these children in foster care, and for a permanency hearing. [FCA 1055] On December 15, 2004 the respondent mother consented to the extension of placement, effective September 29, 2004. The permanency petition filed by ACS, specified that the plan at the time of the extension was to return the children to their mother. According to a report of the contract agency, mercyFirst, filed on September 29, 2004, the goal to return the children to their mother was appropriated, since she was "making strides" to improve her attendance at visits and in planning for the children. The court accepted the parties' agreement, finding through the reports submitted by the contract agency, mercyFirst, that the petitioner, ACS, met its burden to demonstrate that the respondent could not presently care for the children and that continued foster care was in their best interest. [In re G., 39 AD2d 709 [2nd Dept. 1972]; cf., e.g., Matter of Commissioner of Administration. for Children's Services of City of New York, 254 AD2d 416 [2nd Dept. 1998]]. Based upon the submitted reports, the court accepted the goal of return to parent. [FCA 1055[b][iv][B]] However, the court reserved decision on the question whether the contract agency, for the period up to September 29, 2004, engaged in reasonable efforts to assist the mother and children to attain the goal of reunification. [FCA 1055[b][iv][A][3], [B][4]] The permanency hearing was continued to address that issue.
 On March 23, 2005, during pendency of the permanency hearing, the contract foster care agency, mercyFirst, filed a petition to terminate the mother's parental rights on the ground of permanent neglect. [SSL 384-b [7][a]] Therefore, the court was required to consider the procedural effect of the contract agency's having filing the termination of parental rights petition, in light of the existing permanency order establishing a goal of return to parent.
Preliminarily, the court notes that the statute [FN1] places the ultimate responsibility to [*2]determine the appropriate goal for a child in foster care with the Family Court. [See, e.g. In re. Glenn B., 303 AD2d 498 [2nd Dept. 2003]] In the context of a permanency hearing, apart from proving that continued foster care is necessary due to the parents' inability presently to care for the child, and that extension of placement is in the best interest of the child, the petitioning agency has the burden of establishing, by a preponderance of the evidence, that the plan proposed by the agency for the succeeding twelve months is also in the child's best interests. [Id.] To the extent possible, to avoid unnecessary duplication of effort and consequent waste of judicial resources, these determinations should be made in a single proceeding; the permanency hearing. [See, e.g., Matter of Belinda B., 114 AD2d 70, 77 [4th Dept. 1986]["While the statutory scheme may permit an extension proceeding to occur simultaneously with a guardianship proceeding, judicial economy certainly would not encourage this result and the Legislature may be well advised to reexamine the relevant statutes to prevent such a procedural quagmire."]; and see, Matter of Lindsay W., 129 AD2d 800 [2nd Dept. 1987]] Were the agency unable to demonstrate by a preponderance of the evidence at a permanency hearing that grounds exist to free the child for adoption, and that such result is in the child's best interest, it is "highly unlikely that the [agency] could establish by clear and convincing evidence that respondents permanently neglected their children in the guardianship proceeding." [Matter of Belinda B., supra at p 77]] It follows, that where the agency proposes a plan to free the child for adoption, the agency should demonstrate by a preponderance of the evidence at the permanency hearing that a ground for termination of parental rights exists. [In re. Glenn B., supra, 303 AD2d 498]
In light of the allocation of the burdens of proof, and the statutory mandate for a judicial determination of the appropriate goal for these children, the court deemed the termination petition to be equivalent to an order to show cause for leave to renew or to reargue the prior permanency determination. [CPLR 2221] The court granted the agency an opportunity to file such a motion, which was done on April 22, 2005. Now after having reviewed the agency's motion and the answers in response, the motion is granted for the following reasons.
[*3]
The children Kenyon [dob 9-26-00] and Rasheem [dob 2-23-02] were placed in foster care with mercyFirst on July 30, 2002. They have resided in their current foster home since June 22, 2004. Although Rasheem was only months old when he entered foster care, Kenyon entered foster care at the age of 2 years. He had been diagnosed with failure to thrive. Kenyon was replaced in a new foster home after two years in foster care. His new foster mother reported that he cried for extended periods of time for no apparent reason, and often refused to eat. Given this combination of circumstances, the consistency of the mother's visits with Kenyon is of particular concern. The service plan for the mother included that she participate in individual therapy "to learn coping skills;" visit weekly with the children alternating between the agency and the foster home; maintain monthly contact with the agency; comply with preventive services for the two younger children in her care; and be involved with the subject children's education and developmental services. The mother completed a parenting skills class for children with special needs, in November 2004. In December 2004, the mother completed a psychological evaluation. Since the neglect finding, the mother consistently has tested negatively for controlled substances.
The court received eleven exhibits into evidence, in support of the motion. The exhibits show that the children in care have special needs. During the period in question, Rasheem received speech, occupational and physical therapy in the foster home, through an early intervention program, twice a week. Rasheem also demonstrated cognitive delays. Kenyon received services through the Committee on Preschool Education. Kenyon had been in early intervention. At 37 months, Kenyon showed expressive language and auditory comprehension delays, placing him at the equivalent of about 24 months. At 39 months, Kenyon's cognitive ability was at a 26 month level, his physical development was at a 24 month level and his social development was at a 25 month level. Kenyon showed "avoidant and oppositional tendencies quite likely associated with comprehensional and expressive vulnerabilities." His interaction with other children was characterized by hitting, scratching, biting and throwing objects. At 46 months, Kenyon continued to show significant delays, having difficulty following simple instructions. He was unable to perform tasks necessary to a Stanford-Binet assessment for young children. Bayley Scores show a cognitive level of 35 months, and moderately low communication and socialization skills. He continued to be aggressive. The CPSE evaluation recommended a socially oriented day program to enhance social development and counseling to address aggression. In December 2004, Rasheem was diagnosed as having expressive language disorder, development coordination disorder, ADHD, and provisionally, mental retardation.
On February 3, 2005, case worker Shermaine Smith of mercyFirst testified that the agency sought the mother's assistance to enroll Rasheem in CPSE services as he was aging out of early intervention. The worker testified that the mother failed to attend four appointments for Rasheem, scheduled at the Canarsie Childhood Center for Special Needs Children. The mother failed to attend a CPSE meeting at the school district office on February 15, 2005. As a result, the foster parent was appointed surrogate for the purpose of enrolling Rasheem in Preschool Special Education. Since March 2005, Rasheem attends Canarsie Childhood Center daily. The case worker also informed the mother that she could attend monthly meetings at Canarsie Childhood Center, in the morning of the last Wednesday of each month. The mother has not attended.
A psychological evaluation of December 2004, found the mother to have borderline intelligence, with performance functioning in the low average range. She performed on average, [*4]however, when tested for abstract reasoning. The examiner attributed the difference to the mother's level of stress. She reported feeling overwhelmed by visiting her children in foster care while caring for her two young children at home. In light of the mother's report and the variable outcomes in the psychological testing, the evaluator recommended a comprehensive mood assessment, and referral for social supports. The agency referred the mother to Kings County Hospital for an evaluation. Despite repeated efforts by the agency to schedule an evaluation between August 26, 2004 and March 18, 2005, the mother never completed the evaluation.
The mother has two children in her care, DaJon, who is a little over a year old, and Prenel, who is nine months older. She lives with the children's father, in a city shelter. The family is supported by public assistance. The agency referred the children in the mother's care for early intervention evaluation. In August 2004, the preliminary evaluation determined that Pernel qualified for early intervention services, based upon developmental and speech delays. Initially, the early intervention provider closed Prenel's case when the mother failed to obtain a medical examination. The agency assisted the mother to have Prenel's early intervention case reopened, in January 2005, after the medical examination was completed. However, the early intervention program, All About Kids, reported that they were unable to contact the mother to schedule an initial meeting to formulate an Individualized Family Service Plan. Among their efforts was a letter to the mother, including a contact telephone number. As a result of the mother's failure to respond, Pernel's case was closed a second time. The mother ultimately contacted All About Kids in March 2005. The agency then attempted to have the mother complete the process. Developmental and speech evaluations were completed, but the psychological evaluation was not completed until March 31, 2005 when regulations required that the case be closed for the third time. As of the date of the hearing, the mother had contacted All About Kids on April 8, 2005 and they were again in the process of reopening the case in order to complete the necessary evaluations.
The court directed that the mother be offered preventive services to reduce the stress of caring for the children at home. Family Dynamics assumed responsibility to provide preventive services. MercyFirst requested the preventive services at the court's direction, on November 1, 2004. The preventive services agency located the mother in the shelter system with the assistance of Ms. Smith on November 22, 2004. The mother agreed to attend an appointment the following day to discuss the referral. The mother failed to appear. The preventive worker returned to the mother's residence on November 30, 2004. Again the mother agreed to attend a meeting at the preventive services office the following day. Again she failed to attend. The preventive worker then sent the mother a letter on December 2, asking her to come to the office on December 9 or the agency would consider the referral refused. The mother failed to respond and preventive services were not implemented. The agency then referred the mother to a second preventive services agency, Brooklyn Bureau of Community Service [BBCS]. As of the date of the hearing, in April 2005, BBCS managed to have the mother attend an office appointment for intake on March 30, after two failed attempts. As of April 13, 2005 the preventive services agency had three appointments with the mother and her children, including a home visit on April 5, 2005.
The agency records show that the mother visited Rasheem and Kenyon inconsistently. The agency scheduled weekly visits between the mother and the children. On February 3, 2005, [*5]mercyFirst reported that the mother visited her children only once since October 2004. Upon review of the agency visiting logs, the court found that the mother appeared for visits on October 28, and November 22, but that the foster mother failed to produce the children. The foster mother cancelled a visit on December 2, 2004. A visit occurred on December 16, 2004. No one appeared on October 21, December 23 or December 30. The mother failed to appear November 4, 18, and cancelled a visit on December 9, 2004. Of visits scheduled for February, the mother failed to appear on February 3, 10 and 24. The mother failed to appear on March 3 and 10. She appeared on March 17, 24 and 31. In April, the mother cancelled on the 7th, but appeared on the 14th , 21st and 28th.
In summary, the evidence proves that the mother needs supportive services to enable her to cope with the stress of caring for her two youngest children, while planning for her two oldest children. Moreover, the mother's statements that she feels overwhelmed are borne out by her inconsistency in cooperating with the agency's efforts to engage her in obtaining special education services for her children in foster care, and developmental services for her children at home. An evaluation in December 2004, confirmed that the mother may be in need of psychological or other services to enable her to meet the special needs of all of her children. Consequently, the court finds the service plan appropriate as formulated by the agency.
Despite the marginal progress that the mother made in the final weeks before submission of the motion for decision, the court finds that the petitioner met its burden by to prove by a preponderance of the evidence, grounds for a termination of parental rights, based upon permanent neglect. The children have been in foster care for almost three years. The agency proved that it scheduled regular visits, referred the mother for evaluations and supportive services. The evidence proves that during the last six months the mother's visits were sporadic. In addition, she failed to follow through with an assessment to determine her need for psychological services to assist her in coping with the stress of caring for her two youngest children. Until the week before the motion was submitted, the mother failed to follow through with preventive services to assist her to meet the needs of the children in her care. The mother also was inconsistent in taking steps necessary to obtain early intervention services for one of the children in her care. This failure was consistent with her failure to cooperate with the agency to obtain special education services for Rasheem. Moreover, the purpose of these proposed services was to provide social and psychological support to enable the mother to visit consistently and to plan for her children in foster care.
The mother's inability to access services for the children in her care indicates that her children in foster care, who also have special needs, are at risk of continued neglect if returned to their mother. The mother's failure to meet the special needs of the subject children would be contrary to their best interests. Consequently, the court approves a goal of adoption, on condition that the agency engage in concurrent planning. The agency is to continue to assist the mother to obtain psychological, and/or supportive developmental services, and the social supports necessary to assist her to meet the needs of her children at home, and to consistently plan for her children in foster care.
The foregoing constitutes the opinion and decision of the court.
[*6]
May 26, 2005__________________________________
Lee H. Elkins, JFC
Footnotes

Footnote 1: FCA 1055 [b][iv][B] states: in determining whether an extension of placement is consistent with the best interests of the child, the court shall consider and determine in its order:
1. whether an extension is consistent with the permanency goal established for the child in the child services plan as approved, adjusted or modified by the court;
2. whether the child would be at risk of abuse or neglect if returned to the parent or other person legally responsible for the child's care;
3. in the case of a child placed outside this state, whether the out-of-state placement continues to be appropriate and in the best interests of the child;
4. where appropriate, that reasonable efforts were made to make it possible for the child to safely return to his or her home, or [where] the permanency plan for the child is adoption, guardianship or some other permanent living arrangement other than reunification with the parent or parents of the child, [that] reasonable efforts are being made to make and finalize such alternate permanent placement;
5. whether or when the child: (i) will be returned to the parent; (ii) should be placed for adoption with the social services official filing a petition for termination of parental rights; (iii) should be referred for legal guardianship; (iv) should be placed permanently with a fit and willing relative; or (v) should be placed in another planned permanent living arrangement if the social services official has documented to the court a compelling reason for determining that it would not be in the best interest of the child to return home, be referred for termination of parental rights and placed for adoption, placed with a fit and willing relative, or placed with a legal guardian;