■ In the Matter of CHARLES DD. and Others, Alleged to be Abused Children. MADISON COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Respondents; BERNARD EE., Appellant.—Mikoll, J. Appeals (1) from an order of the Family Court of Madison County (Humphreys, J.), entered February 15, 1989, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondents' children to be abused, and (2) from an order of said court, entered March 7, 1989, which, *inter alia,* prohibited contact of respondent Bernard EE. with the children.

This proceeding alleging abuse was commenced by a petition dated December 7, 1988 and was based on certain incidents of sexual abuse which occurred in 1980. Respondents, the stepfather and mother of Charles, Tina and Sabrina DD., were charged with abusing the children pursuant to Family Court Act § 1012. The children were 14, 12 and 11 years old, respectively, at the time of the hearing of the petition. After a lengthy hearing, Family Court found that the children were on a weekend visitation with respondents from September 20,

1980 to September 21, 1980;[1] they were then six, four and two years of age, respectively. The children were returned therefrom in a filthy, lice-ridden condition, and the two girls had swollen vaginal and rectal areas. All three children thereafter began acting out sexual acts for a substantial period which, upon inquiry, the children said they were taught by the stepfather with their mother present. Tina related that the stepfather touched them in their pubic areas. The children were also permitted to view sexual acts by the stepfather, and Tina and Charles were taught to assume sexual positions as to one another. The children were deeply disturbed after the visitation, as evidenced by their crying in their sleep and episodes of bed-wetting. The girls' foster mother, who testified as to the physical condition of the girls, reported the incident to a crisis intervention center and took the girls to a physician several days later. The physical evidence of irritation had subsided by then and the physician could not confirm if sexual abuse had occurred. The evidence also disclosed that the stepfather pleaded guilty in a previous criminal proceeding to charges relating to sexual activity with the mother's 16-year-old sister and he had been convicted for drug abuse as well. There was also evidence that on another supervised visit of recent vintage, the stepfather inappropriately hugged Tina, touching her breasts, and Tina testified to a feeling of unease in his presence. Family Court found the testimony of the children's foster mothers to be corroborative of Tina's testimony which, in turn, was sufficient to prove the allegations of sexual abuse as to all three children by clear and convincing evidence (see, Family Ct Act § 1046 [a] [i]).

The dispositional hearing further disclosed that on another occasion, a prior order of Family Court, directing that the stepfather have no contact with the children, was violated. During a visit by the children with their mother, the stepfather was found to have been present in the home and, on this occasion, the stepfather, the mother and the children all slept together on one mattress. There was testimony from the girls of inappropriate tickling of the children by the stepfather. Family Court found that both the stepfather and the mother perjured themselves in denying that he was present in the home on this occasion.

The record also disclosed that the mother was very depen-

1. The children had previously been placed in petitioner's care and this visitation was occurring apparently as part of a visitation schedule with respondents.

dent on the stepfather and was dominated by him. Attempts to teach respondents parenting skills were partially successful with the mother but totally ineffective as to the stepfather. The children have affection as to their mother but exhibit deep-seated reservations as to their stepfather. He fills the children with unease, particularly Tina.

Family Court found that respondents pressured the children into consenting to change their surnames to that of the stepfather and that the children were emotionally disturbed by the exerted pressure. Most recently, Charles was pressured by respondents to indicate that he wished to live with them. They promised him he could drive the stepfather's car and have ready access to videos if he did as they asked. Respondents spend most of their free time watching videos. The testimony also bore out another incident reflective of respondents' home life, wherein the mother admitted watching a video with her son in which frontal nudity was shown. There appears to be no understanding by respondents of their parenting responsibilities. Respondents react to the children as peers, rather than authority figures, thereby reflecting their immaturity.

Family Court concluded that further contact with the stepfather was contraindicated and detrimental to the best interests of the children. Custody of the children was continued with petitioner for 18 months with continued supervised visits with their mother. No further visitations with the stepfather were permitted.

The stepfather seeks a reversal of the determination,[2] contending that he was denied effective assistance of counsel in the proceeding. He asserts that his counsel failed to raise and preserve issues of laches and constitutional questions of denial of due process and equal protection. At the crux of the stepfather's contention is the eight-year lapse of time from the occurrence of the sexual abuse and the initiation of the abuse charges under the Family Court Act. He urges that the failure to have a statutory limitation on the commencement of Family Court proceedings denies him due process and equal protection under the law.

A Family Court proceeding must "measure up to the essentials of due process and fair treatment" (*Matter of Fisher*, 79 Misc 2d 905, 906). We note, contrary to the stepfather's contention, that his trial counsel repeatedly raised the staleness of the allegations of sexual abuse both as reflecting on

---

2. The mother has not appealed Family Court's decision.

the credibility of petitioner's witnesses and as lacking materiality to the present family situation. We note that the stepfather was a live-in boyfriend of the mother at the time of the 1980 weekend incident. He was out of the home after the incident and no proceedings were brought against him at that time. The present petition was initiated as a result of respondents' desire to have the children returned to them and for increased visitation. An inquiry as to the appropriateness of their request followed and culminated in the instant petition.

The powers of Family Court are broad. Family Court Act § 1011 provides that it is designed to "help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being". Taking into consideration the broad mandate of the Family Court Act, the usual treatment of transgressions by limiting legal prosecutions thereof to a statutory period is unavailing in Family Court petitions and bears no statutory limitations. Family Court proceedings do not focus on penal sanctions but are instead directed to the protection of minors. Consequently, any relevant and material evidence may be admitted in any hearing under Family Court Act article 10 (see, Family Ct Act § 1046 [c]; Matter of Nassar v Santmire, 99 AD2d 377). Consequently, the testimony as to sexual abuse, although of some years past, was nonetheless relevant to the question of whether respondents should have been granted access to these children. Family Court is duty bound to determine not only whether there has been neglect or abuse in the past, but also the likelihood of such conduct in the future (Matter of Valerie Leonice T., 107 AD2d 327).

A parent's rights must be subordinate to the paramount purpose of the statute, which reflects the strong public policy of the State to protect a child's interest against an unwilling or inept discharge of parental responsibilities. A court cannot close its eyes to any imminent danger to a child and normal concepts of staleness may not be applicable when a child may still be in such danger. In a thoughtful discussion on staleness in abuse or neglect proceedings found in Matter of T. C. (128 Misc 2d 156), the court correctly indicated that allegations may not be stale; they must refer to continuing conduct or behavior patterns. We find such troublesome behavior patterns present here. The evidence of the 1980 incidents, coupled with recent improper behavior by respondents on two other occasions, is ample evidence that the risk to the children is still imminent. We conclude that the allegations of abuse, though old, were still relevant and could properly be

considered by Family Court in its decision to deny the stepfather visitation *(see,* Besharov, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1031 [1990 Pocket Part], at 86).

Orders affirmed, without costs. Mahoney, P. J., Mikoll, Yesawich, Jr., Levine and Mercure, JJ., concur.