In the Matter of JOSEPH DD., a Child Alleged to be Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ANGELA DD., Appellant. [752 NYS2d 407] —Spain, J. Appeal from three orders of the Family Court of Schenectady County (Reilly, Jr., J.), entered March 6, 2000, which, inter alia, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's child to be neglected.

On October 29, 1998, petitioner removed Joseph DD. (born in 1989) from his home without a court order apparently pursuant to Family Ct Act § 1024.[1] Later that day, counsel for petitioner appeared ex parte in Family Court before a Judicial

---

1. Family Ct Act § 1024 provides that in urgent situations, such as when a child's life or safety is in imminent danger and there is no time to apply for a court order, removal of the child by child protective authorities is authorized without prior court review. However, removal under such emergency circumstances requires the filing of a Family Ct Act article 10 petition "forthwith" and prompt court review of the nonjudicial decision pursuant to Family Ct Act § 1026 (c) and § 1028.

Hearing Officer (hereinafter JHO) seeking an emergency removal. Counsel, on the record but not under oath, reported information received from petitioner's child protective unit to justify the removal, including, among other things, that respondent exhibited symptoms of mental illness which impaired her ability to supervise Joseph, that she believed Joseph was possessed by demons and that she bound and blindfolded Joseph and prohibited him from using the bathroom causing him to wet his pants. There is no indication in the record that respondent had notice of petitioner's court appearance; in fact, counsel reported to the court that respondent was being admitted to the mental health unit of a local hospital. On this basis, the JHO issued a temporary order of removal which placed the child with petitioner (*see* Family Ct Act §§ 1022, 1024) and, despite the statutory mandate that petitioner file a Family Ct Act article 10 petition "forthwith" (Family Ct Act § 1026 [c]), gave petitioner until November 6, 1998—a week from the next day (six court days)—to file.[2]

The next day, October 30, 1998, having been discharged from the hospital, respondent—acting pro se—filed a written request in Family Court pursuant to Family Ct Act § 1028 seeking, among other things, the return of her child and a hearing within three court days.[3] Respondent's request also sought the assignment of counsel stating that she was financially unable to afford one. Despite the statutory mandate, a hearing pursuant to the statute (hereinafter 1028 hearing) was not scheduled within three court days of respondent's request; rather she was directed by court personnel to appear in court on November 6, 1998. While respondent appeared, as directed, on November 6, no 1028 hearing had been scheduled and, although the court had appointed a Law Guardian for the child, counsel had not yet been assigned to represent respondent. A different JHO was presiding and made no mention of respondent's earlier request for a hearing and assignment of counsel but, instead, urged respondent to apply for the assignment of counsel or

---

2. The neglect petition which commenced this proceeding is dated November 5, 1998 and appears to have been filed on November 6, 1998. Notably, the petition fails to reflect that the child was removed prior to the filing of the petition, which information is required by Family Ct Act § 1031 (e).

3. Pursuant to Family Ct Act § 1028 (a), upon application of a parent of a child who has been temporarily removed, Family Court is required to hold a hearing to determine whether the child should be returned. Moreover, "[e]xcept for good cause shown, such hearing shall be held *within three court days* of the application and shall not be adjourned" (Family Ct Act § 1028 [a] [emphasis added]).

hire private counsel and advised her to return to court on Tuesday, November 24, 1998.[4]

On that distant adjourned date, respondent appeared for the first time with assigned counsel,[5] who reminded Family Court that respondent was entitled to a 1028 hearing. The court, treating counsel's reminder as an initial request, scheduled a 1028 hearing for Monday, November 30, 1998, which was three court days later. No objection was made by counsel to the court's delay in scheduling the 1028 hearing, and respondent was not permitted to visit with her child.

There is no record of what occurred on November 30, 1998 except that, on December 2, 1998, Family Court reported on the record that the hearing had been adjourned on November 30 at the request of "several parties," apparently including respondent's counsel; the hearing was then rescheduled— without objection to the delay—to Monday, December 7, 1998. Again, there is no record of what transpired on December 7 but, on December 10, 1998, respondent appeared with counsel before a visiting Family Court Judge (from another county) and withdrew her request for a 1028 hearing, agreeing to an indefinite postponement pending completion of a scheduled court-ordered psychiatric evaluation. On January 14, 1999, respondent appeared—this time before a JHO—and a trial date was set for March 24, 1999, the psychiatric evaluation and report to the court having been completed the previous week. Once again, the postponement provoked no objection.[6] There is scant record evidence of what occurred on that adjourned date, but a fact-finding hearing did not occur. On the next recorded appearance date—June 3, 1999—Family Court stated on the record that the hearing was not held in March due to an unspecified court "emergency matter" and a new trial date was set for July 14, 1999 without objection. During all of this time, the child continued in foster care and respondent was prohib-

---

**4.** At the November 6, 1998 appearance, respondent inquired about her requested 1028 hearing and reported to the JHO that court personnel had informed her that her written request was not sufficient to seek a prompt hearing. In our view, the written request—which is part of the record—was clearly worded and more than sufficient to articulate respondent's desire for, among other things, a prompt 1028 hearing and the assignment of counsel.

**5.** Respondent was assigned the Public Defender. No less than five different attorneys from that office appeared on behalf of respondent up until and including the fact-finding hearing.

**6.** Notably, Family Ct Act § 1049 states as follows: "In scheduling hearings and investigations, the court shall give priority to proceedings under this article involving abuse or in which a child has been removed from home before a final order of disposition. Any adjournment granted in the course of such a proceeding should be for as short a time as is practicable."

ited from any contact with him, and no 1028 hearing was ever held.

Evidence at the fact-finding hearing[7] —eventually held in July and August 1999—demonstrated that on October 29, 1998, petitioner had received a hotline report indicating that respondent was seen being verbally abusive to five children at a church and she was claiming that they were "demons" and "needed prayers." Upon investigating this report, a caseworker went to respondent's residence and Joseph informed her that respondent had blindfolded him with his hands bound and threw water in his face, claiming that he was possessed by "demons," and that respondent would not allow him to use the bathroom, resulting in his urinating in his pants. A clinical psychologist who evaluated both respondent and the child in December 1998 testified that the child was "fearful" of respondent and had "expressed some concerns" about being in contact with her, that she required treatment for her mental condition and that, as a result of her condition, the level of care that she was providing the child placed him in imminent psychological danger. Respondent did not testify.

After the conclusion of the hearing, the JHO found Joseph to be a neglected child and continued the temporary order of removal and placement with supervised visitation, observing that the supervised visitation arrangement had been successful. Thereafter, upon the assigned Family Court Judge recusing himself, the case was assigned to another Family Court Judge and, after a dispositional hearing held January 10, 2000, the court, inter alia, promptly vacated the temporary order of removal and placement and returned the child—by then in foster care for more than 14 months—to respondent, subject to a one-year order of supervision and an order of protection. Respondent appeals from the order of disposition, the order of protection and the order of supervision.

Initially, we take this opportunity to emphasize that a JHO does not have the authority to grant an ex parte application for a temporary order of removal.[8] Although the Legislature has recently given the Chief Administrator of the Courts the power

---

7. At the end of the first day of the fact-finding hearing—July 14, 1999—the JHO vacated an order of protection which had prohibited respondent's contact with the child, and respondent was thereafter permitted two to five hours of supervised visitation per week.

8. Pursuant to Rules of the Chief Administrator of the Courts, CPLR 4317 (a) and Family Ct Act § 165 (a), references to a JHO or referee to "hear and determine" require the consent of all parties (see Matter of Heather J., 244 AD2d 762, 763), and no such consent was ever obtained from respondent on the day of the removal order.

to authorize JHOs—at specified times in certain specified Family Courts—to hear and determine ex parte applications for orders of protection (*see* Judiciary Law § 212 [2] [n]), JHOs have no authority to issue such ex parte orders of removal. Furthermore, there can be no doubt that respondent was unfairly denied a 1028 hearing; while she clearly was entitled to a hearing within three court days of her October 30, 1998 request, Family Court repeatedly overlooked that statutory right.[9]

Also, while respondent ultimately withdrew her request for the 1028 hearing,[10] we conclude that, up until the fact-finding hearing, she was inadequately represented in that counsel failed to pursue her rights, contributing to the denial of a prompt 1028 hearing and to the inordinate delay in the ultimate disposition of this proceeding. The first attorney who appeared for respondent never questioned the efficacy of the removal order and failed to recognize the significance of respondent's written request for a 1028 hearing and assignment of counsel, and that 24 calendar days (16 court days) had passed since her request was filed with Family Court. None of the attorneys representing respondent objected to the delays throughout November 1998 and, in fact, the record reflects that the 1028 hearing scheduled for Monday, November 30, 1998, was not held, among other reasons, because of "difficulties with [respondent's counsel's] office." The first time any attorney representing respondent requested any kind of visitation between respondent and the child was January 14, 1999. Finally, although in mid-January 1999 Family Court set a fact-finding hearing date for March 24, 1999, the hearing did not begin until July 14, 1999—without objection from counsel. There is also no evidence of a *renewed* request by respondent's counsel for visitation between January 14, 1999—when the psychological evaluation and report were completed and in the court's possession—and the first day of the fact-finding hearing, July 14, 1999, when the court permitted supervised visits for the first time.

However, notwithstanding these infirmities, we conclude

---

**9.** We are also reminded that the Family Court rule, sometimes called the "One Family/One Judge Rule," states as follows: "Multiple proceedings involving members of the same family shall be assigned to be heard by a single judge to the extent feasible and appropriate, including, but not limited to, child protective, foster care placement, family offense and custody proceedings" (Uniform Rules for Family Ct [22 NYCRR] § 205.3 [c] [6]).

**10.** Although respondent, with the aid of counsel, may have consented to waiving or postponing the 1028 hearing, it is our view that by that point in time her right to a prompt hearing had already been denied.

that the defects in the JHO's temporary order of removal are not grounds for reversal because the final dispositional order expressly vacated that order, rendering moot any appeal from the purported temporary order (*see Matter of Joyce SS.*, 245 AD2d 962; *Matter of Nicotera v Nicotera*, 222 AD2d 892, 894; *Matter of Brozzo v Brozzo*, 192 AD2d 878, 879). Furthermore, despite the failings of counsel and Family Court during the period preceding the fact-finding and dispositional hearings, we conclude that the finding of neglect is, nonetheless, amply supported by the evidence presented at the fact-finding hearing and that, during the course of both the fact-finding and dispositional hearings, respondent received effective assistance of counsel. Evidence at the fact-finding hearing demonstrated convincingly that respondent suffered from a mental disorder which limited her ability to care for her child and that her behavior placed Joseph in imminent physical and psychological danger (*see* Family Ct Act § 1012 [f] [i] [B]; § 1046 [b] [i]; *Matter of Brandon OO.*, 289 AD2d 721; *Matter of Catherine KK.*, 280 AD2d 732, 735). Counsel's decision not to call any witnesses at the fact-finding hearing was a matter of strategy and the record reflects that counsel made appropriate motions, effectively cross-examined witnesses, presented medical records on behalf of respondent, and actively and effectively cross-examined the only witness at the dispositional hearing, the psychologist who performed the post fact-finding evaluation. Accordingly, on the record before us, we cannot say that counsel provided less than meaningful representation during these hearings, despite the unfairness of these proceedings to respondent during the long delay leading up to those hearings (*see Matter of Andrew MM.*, 279 AD2d 654, 655-656).

At the conclusion of the dispositional hearing—conducted by the newly assigned Family Court Judge—which included testimony by a psychologist who evaluated respondent and the child subsequent to the fact-finding hearing, and during which an in camera interview with the child was conducted, Family Court characterized the neglectful acts which led to the removal as a "single psychotic episode." The court stated that "[i]t is of note that in the ten years of this child's life, the respondent has experienced only one apparent episode and that, despite the stress of these court proceedings, no further decompensations have occurred in over one year"—observations which are supported in the record. The court then ordered that Joseph be returned to the custody of respondent subject to a one-year order of supervision and an order of protection, the terms of which have not been challenged by respondent in this appeal.

If this were a criminal matter, the pretrial delay would be relevant in determining whether respondent's right to a speedy trial was denied and could result in a dismissal of pending criminal charges. However, this is a civil proceeding in which the welfare of a child was at issue (*see Matter of Charles DD.*, 163 AD2d 744, 747). While recognizing that parents' rights are subordinate to the purpose of Family Ct Act article 10, which was enacted to protect children (*see id.* at 747), we are deeply troubled at the manner in which respondent's case was handled including, among other things, the misuse of a JHO at the removal stage, Family Court's failure to hold—without good cause shown—a prompt hearing where a temporary removal order had been made, inadequate representation by respondent's counsel during the pretrial period, lack of continuity of presiding judges, JHOs and attorneys, and the continuing inordinate delays which occurred throughout this child protection proceeding.

Ultimately, however, this appeal rests on the legitimacy of a neglect finding and we cannot overlook the circumstances which led to the child's removal despite the subsequent unfair treatment of the parent. In our view, the infirmities in this case did not prejudice the outcome of the hearings, although we are mindful that the harm done here to both mother and child—their unnecessarily long separation—is likely of an irreparable nature which must be avoided with vigilance in all cases. Accordingly, the finding of neglect should be affirmed.

Mercure, J.P., Crew III, Peters and Carpinello, JJ., concur. Ordered that the orders are affirmed, without costs.